**In the Matter of Petition for ADOPTION OF J. S. R.**

No. 8773.

District of Columbia Court of Appeals.

Argued Feb. 10, 1977.

Decided May 26, 1977.

David J. Ontell, Washington, D.C., appointed by this court, for appellant.

Jean R. Bower, Washington, D.C., for J. S. R.

Before NEWMAN, Chief Judge, GALLAGHER, Associate Judge, and HOOD, Chief Judge, Retired.

NEWMAN, Chief Judge:

Over the objection of appellant the natural mother of J.S.R., the court granted a petition for his adoption by his foster parents. She appeals primarily asserting that: (1) the "best interest of the child" standard of the D.C.Code 1973, § 16–304(e) [1] is unconstitutionally vague; (2) to permit adoption of her child over her objection without requiring a finding that she is unfit violates constitutional mandates; and (3) the trial

---

1. While the consent of a natural parent is normally required for adoption of his or her child by another, D.C. Code 1973, § 16–304(b)(2), the court may grant such adoption "without any of the consents specified in this section, when the court finds after a hearing, that the consent or consents are withheld contrary to the best interests of the child." D.C. Code 1973, § 16–304(e).

court used an improper standard of proof. Finding no merit in these contentions, we affirm.[2]

Prior to the birth of J.S.R., appellant contacted the appropriate governmental social service agency seeking an adoptive placement for her expected child. For reasons not disclosed by the record, she was refused. J.S.R. was born in December 1967, in D.C. General Hospital. Appellant was married and the mother of two other children, but J.S.R. was not the child of her husband. Paternity has not been established. While hospitalized, appellant was diagnosed as having multiple sclerosis. Because she was unable to care or provide a home for him, J.S.R. remained at the hospital after birth and was eventually placed in the temporary care of the Department of Public Welfare. By order of the Juvenile Court in January 1969, J.S.R. was found to be homeless and without adequate care. He was ordered committed to the Department of Public Welfare for an indeterminate period of time.[3] Pursuant to this commitment, J.S.R. has remained in foster homes until the date of his adoption in these proceedings.[4]

In the months immediately following J.S.R.'s birth, appellant sought to place him for adoption, but the Department of Public Welfare, for reasons which are again unclear of record, declined to accept her consent to adoption. She has never executed a Consent to Adoption and in recent years has repeatedly refused such consent.

The court below conducted a two-day hearing on the adoptors' petition for adoption. Numerous witnesses were heard, including a psychiatrist from Children's Hospital who had examined J.S.R. The adoptors were represented by counsel. The court appointed an attorney for appellant, another to represent the interest of J.S.R., and an Assistant Corporation Counsel participated on behalf of the District of Columbia.

The court found that J.S.R. had never known his natural mother; and had experienced personality damage from the several foster home placements which had occurred during his first four years, but that he was beginning to gain confidence in the home of his adoptors. The court found that appellant was a victim of multiple sclerosis who was dependent on others for most of her physical needs.[5]

The trial court, expressing full recognition of the interest of the natural parent and her right to primary consideration, found that consent to his adoption was being "withheld contrary to his best interest." Recognizing that courts are seldom faced with the choice of good and bad, particularly when dealing with children, the trial court characterized its choice as being "the least detrimental alternative."[6] It granted the petition for adoption, thereby terminating the parental relationship between J.S.R. and his natural parents.

### I.

To withstand a vagueness challenge, a statute such as here at issue must state its standard with adequate clarity and mark sufficiently distinct boundaries for

---

2. Appellant's other contentions consist of the asserted ineffectiveness of her court-appointed attorney; the asserted bias of the trial judge; a contention that a finding of "unfitness" of the natural parent is required by our decisions before D.C. Code 1973, § 16–304(e) can be invoked; and that the findings as made are not supported by the evidence. These contentions are likewise without merit.

3. Appellant appeared personally in this proceeding in 1969. She admitted the allegations in the petition. Medical evidence was introduced confirming that she was a paraplegic and unable to care for J.S.R.

4. J.S.R. was placed in the home of the adoptors in December 1971 and has been in their care continually since that time.

5. A portion of the trial court's well-reasoned and thoughtful opinion is appended hereto as Appendix A.

6. See J. Goldstein, A. Freud, and A. J. Solnit, Beyond the Best Interest of the Child (1973); and decision of Judge Murphy in his excellent opinion in In re N. M. S., 102 Wash.D.L.Rep. 281 (Jan. 17, 1974), aff'd, D.C.App., 347 A.2d 924 (1975).

the law to be fairly administered. However, lack of precision is not, in and of itself, offensive to the requirement of due process. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

The standard "best interest of the child" began to gain prominence in the jurisprudence of this country in the contexts of child-custody cases subsequent to the fountainhead opinion of Judge Brewer in *Chapsky v. Wood,* 26 Kan. 650 (1881). Its first recognition in this jurisdiction appears to have been in *Wells v. Wells,* 11 App.D.C. 392 (1897), and by today it has become well engrained in our decisional law as the test to be applied in child-custody cases, whether between spouses, *Coles v. Coles,* D.C. App., 204 A.2d 330 (1964), or between natural parent and a non-parent, *In re N. M. S.,* D.C.App., 347 A.2d 924 (1975).[7] Likewise, we have applied "the best interest of the child" standard in child neglect cases. *In re Lem,* D.C.Mun.App., 164 A.2d 345 (1960); *In re Lambert,* D.C.Mun.App., 86 A.2d 411 (1952). We have recognized that this standard does not contain precise meaning. As we have pointed out, given the multitude of varied factual situations which must be embraced by such a standard, it must of necessity contain certain imprecision and elasticity. *In re N. M. S., supra; Johnson v. Lloyd,* D.C.App., 211 A.2d 764 (1965); *Coles v. Coles, supra.*

To say that such standard lacks precise meaning is not to say that it is without content and bounds. Such content and bounds have been explicated over the years not only in custody disputes between parents,[8] and between parent and non-parent,[9] but in child neglect cases as well.[10] We think it is plain that the standard "best interest of the child" requires the judge, recognizing human frailty and man's limita-

tions with respect to forecasting the future course of human events, to make an informed and rational judgment, free of bias and favor, as to the least detrimental of the available alternatives. *In re Adoption of Tachick,* 60 Wis.2d 540, 210 N.W.2d 865 (1973). No more precision appears possible.[11] In this context, no more is constitutionally required. *Winter v. Director, Department of Welfare,* 217 Md. 391, 143 A.2d 81 (1958).

## II.

Appellant contends that to permit adoption of J.S.R. over her objection without requiring a finding that she is unfit violates constitutional mandates. She contends that since D.C.Code 1973, § 16–304(e) does not contain such a requirement, it denies her due process of laws guaranteed to her by the Fifth Amendment.

The right of a natural parent to raise one's child is a fundamental and essential one which is constitutionally protected. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). However, it is not an absolute one. The state has both the right and the duty to protect minor children through judicial determinations of their interest. *Id.* To this end, the state has a substantial range of authority to protect the welfare of a child, *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and the state's legitimate interest in the child's welfare may be implemented by separating the child from the parent, *Stanley v. Illinois.*

In *Winter v. Director, Department of Welfare, supra,* the natural father of a minor challenged the constitutional validity of a Maryland statutory framework, nearly identical to our own, which permitted adoption without parental consent if the

---

7. The adoption of this test in New York was by the opinion of Judge Cardozo in *Finlay v. Finlay,* 240 N.Y. 429, 148 N.E. 624 (1925).

8. *Coles, supra; Boone v. Boone,* 80 U.S.App. D.C. 152, 150 F.2d 153 (1945).

9. *In re N. M. S., supra; Johnson v. Lloyd, supra; Cooley v. Washington,* D.C.Mun.App.,

136 A.2d 583 (1957); *Holtsclaw v. Mercer,* 79 U.S.App.D.C. 252, 145 F.2d 388 (1944).

10. *In re Lem, supra; In re Lambert, supra.*

11. *See* The Uniform Marriage and Divorce Act (U.L.A.) (with amendments approved August 27, 1971) § 402, containing a compilation of factors most commonly relied upon.

court found such consent to be withheld contrary to the best interests of the child. In finding the statute to be constitutionally valid, the Maryland Court of Appeals, recognizing the role of the state as *parens patriae,* stated:

> The validity of legislation permitting an adoption without the parents' consent is based upon the fact that a parent has no inherent right of property in a child, and the right that a parent has to the custody and rearing of his children is not an absolute one, but one that may be forfeited by abandonment, unfitness of the parent, or where some exceptional circumstances render the parents' custody of the child detrimental to the best interests of the child. [*Id.,* 217 Md. at 396, 143 A.2d at 84 (citations omitted).]

We find nothing offensive to constitutional mandates in our statutory standard which focuses on the best interest of the child rather than solely on the status or abilities of the natural parent.

### III.

Having concluded that the right of a parent to raise one's child is an essential, but not absolute, one, which can be terminated when the best interest of the child so requires, we turn to appellant's last contention on appeal. She contends the standard of proof used to determine whether parental consent was being withheld contrary to the child's best interest, *i. e.,* that of a "substantial preponderance" of the evidence, is too low to comport with due process of law. The "preponderance" standard is said to be a comparative one requiring the court to merely determine who has the most competent evidence, and consequently, is too insecure a basis for severance of parental ties. Appellant submits that "clear and convincing" is the minimum constitutionally-tolerable standard and urges this court to adopt the higher standard of "beyond a reasonable doubt."

The adoption statute does not, by its terms, set the standard of proof. We note for purposes of comparison that the allegations in a neglect petition need only be established by a "preponderance of the evidence." D.C.Code 1973, § 16–2317(c)(2). Since the consequences of a finding that parental consent to an adoption is being withheld contrary to the best interests of the child are more severe than those of a finding of neglect, we conclude a higher standard of proof is warranted, although not constitutionally required. We, therefore, hold that parental consent must be shown to have been withheld contrary to the child's best interests by "clear and convincing" evidence. This degree of proof is particularly appropriate in cases, such as the instant one, in which "the wisdom of experience has demonstrated the need for greater certainty, as where this high standard is required to sustain claims which have serious social consequences or harsh or far-reaching effects on individuals . ." 32A C.J.S. *Evidence* § 1023 (1964); *United States v. Bridges,* 133 F.Supp. 638, 641 n. 5 (N.D.Cal.1955).

After a careful review of the record, we are satisfied that the standard enunciated by the trial court, *i. e.,* "substantial preponderance" of the evidence and the one we establish herein, *i. e.,* "clear and convincing" evidence, are substantially identical. Thus, there is no occasion to remand to the trial court for consideration in light of this opinion.

*Affirmed.*

### APPENDIX A

Superior Court of the District of Columbia Family Division

J–0084–69

8501–72–A

In the Matter of J.S.R., Respondent
OPINION AND ORDER

[Portions of Opinion Omitted]

Mounting empirical evidence indicates that a child's wellbeing and growth are enhanced by a stable home setting in which his psychological needs for love, discipline and nurture are consistently provided. Change in his home setting is invariably

detrimental in the short run, and, if repeated frequently, results in a sociopathic personality which finds it difficult to trust and relate to others with confidence. (Footnote omitted) Dr. Alan B. Zients, the psychiatrist from Childrens' (sic) Hospital and a forensic psychiatric consultant to the D.C. Department of Human Resources, testified after an examination of the child J.S.R. that J.S.R. has already experienced some personality damage from the several changes which occurred in his first four years, but is beginning to grow in trust and confidence in the nurturing home of the prospective adoptive parents. In the considered opinion of Dr. Zients, "the least detrimental alternative" for J.S.R. would be to be continued and permanently established in the household in which he is now living, the home of the prospective adoptive parents. Another change in setting would undoubtedly set back his growth and hence not be in his best interests.

In this case, through circumstances to some extent beyond the control of [the natural mother] J.S.R. presently knows no other parents than . . . (the adoptors) . . . .. They have become his psychological parents. To return him to the custody of his biological mother now because of his blood relationship would be traumatic and would require another major adjustment not deemed to be in the best interests of J.S.R. (footnote omitted).

The physical and psychological needs of J.S.R. are now being met by [the adoptors] Their interaction, companionship and affection for the child is manifest. The letter which the Court received from their adopted son, now a young adult, indicates an additional wholesome tie available to J.S.R. if this petition for adoption is granted. The child is clearly wanted by the prospective adoptive parents.

J.S.R. is also now wanted by his biological mother. But her reasons appear more selfish. Her expressed belief is that a mother has the right to keep her own child. She is a victim of multiple sclerosis with a severely shortened life expectancy. She is de-

pendent upon practical nurses, her other two children and new husband for most of her physical needs. She and her husband and two children now live in a one bedroom apartment. The D.C. Department of Human Resources provides most of the funds for her and her children, supplemented by the meager and sporadic income of her new husband. Although comparison of economic wellbeing is low on the scale of this Court's consideration of what is in "the best interests of the child," there is little doubt that J.S.R. would be materially better provided for by the prospective adoptive parents.

The biological mother has overcome major physical and economic obstacles that made it necessary to declare J.S.R. to be "without adequate parental care" in 1970. Today she and her new husband maintain a viable, if marginal, home for her two older children. If the Court's only choice was between continued foster home placement or returning J.S.R. to his biological mother's home, this Court would, in today's circumstances, definitely set aside the present order of commitment and return him to [appellant's] care and custody.

But today there is a third possibility because of the petition filed by the prospective adoptive parents. Because it seems to this Court to assure the greatest possibilities for maximum continuity of relationships, surroundings and environmental influence, the Court believes that this adoption is in the best interests of J.S.R.

When a judge ascends the bench he is usually given a robe and gavel. A crystal ball is not provided. The law does not afford him the capacity to see into the future. If this Court could lift the curtain of the future and predict the fate which the Almighty intends for [appellant] or [the adoptors], it would be much easier to determine what is in the best interests of J.S.R. Without prescience and with a knowledge of my judicial limitations, but relying upon seventeen years of experience, this Court is convinced by a substantial preponderance of proof in the particular circumstances of this case that the alternative of adoption is the

course which is best for J.S.R. Consequently, the Court finds that [appellant's] refusal to consent is contrary to J.S.R.'s best interests and the adoption is granted despite her refusal to agree.

/s/ Orman W. Ketcham
Associate Judge

Date: June 18, 1974