Petition of William H. DOUGLAS and Loretta C. Douglas, for Adoption.

James W. ROGERS, Appellant,

v.

William H. DOUGLAS et al., Appellees.

Nos. 12133, 12134.

District of Columbia Court of Appeals.

Argued May 10, 1978.

Decided July 25, 1978.

Robert S. Catz, Antioch School of Law, Washington, D.C., appointed by this court, with whom Barbara Kammerman, Peter Fuchs, Washington, D.C., Jeanette Ganousis, National Juvenile Law Center, St. Louis, Mo., and Stephen Jay Weiser, were on brief, for appellant.

Charles A. Brady, Washington, D.C., for appellees.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

These appeals followed the disposition by the Family Division of the Superior Court of petitions for adoption and for a writ of habeas corpus. The petitions were consolidated by the Family Division for hearing. At the conclusion of the hearing, the Family Division over the objections of the natural parent of the adoptee [1] entered a decree of adoption, which has been brought here for review. Claimed as error is the court's determination that the consent of the par-

---

1. D.C.Code 1973, § 16–304 provides in pertinent part:

(a) A petition for adoption may not be granted by the court unless there is filed with the petition a written statement of consent, as provided by this section  .  .  . .

(b) Consent to a proposed adoption of a person under twenty-one years of age is necessary:

    \*      \*      \*      \*      \*      \*

(2) in accordance with the provision of any one of the following paragraphs:

    \*      \*      \*      \*      \*      \*

(B) from the living parent of the prospective adoptee, if one of the parents is dead;

  .  .  .

    \*      \*      \*      \*      \*      \*

(e) The court may grant a petition for adoption without any of the consents specified in this section, when the court finds, after a hearing, that the consent or consents are withheld contrary to the best interests of the child.

ent was withheld contrary to the adoptee's best interests. Error is claimed also in the court's failure to appoint, at government expense, counsel to represent the adoptee in the proceedings. Concluding that there was no error requiring reversal, we affirm.

The adoptee, born April 20, 1965, in Brooklyn, New York, is the issue of the marriage of James Rogers (appellant) and Viola Rogers. Appellant and Viola Rogers separated in 1968 and thereafter the adoptee resided with her mother. In 1969, appellant was indicted for kidnapping, rape and murder of a young female child. He was convicted of the kidnapping charge and sentenced to life imprisonment.[2] While appellant was imprisoned, Viola Rogers obtained a divorce and in 1970, married one Robert Waters, with whom she and the adoptee resided until her death on January 16, 1973.[3]

After her mother's death, the adoptee remained in the household of her stepfather until February 25, 1973, when she was taken into custody by Loretta G. Douglas, the sister of the adoptee's deceased mother, and removed to the District of Columbia. The adoptee has since resided in the District of Columbia with Loretta G. Douglas and her husband William A. Douglas (the adoptors). On petition to the Family Division and after a full hearing, the Douglases were awarded in February 1974 permanent custody of the adoptee.

In December 1974, the adoptors petitioned the Family Division for a decree of adoption and the petition was referred to the District of Columbia Department of Human Resources for investigation and report. Appellant was at that time imprisoned in the State of New York and, by appointed counsel, opposed the petition and prayed for a writ of habeas corpus. The adoptors' petition was opposed also by Robert Waters, the adoptee's stepfather, who himself petitioned for a decree of adoption.

The Family Division conducted on February 9, 1977 a hearing on the consolidated petitions and the cross-petition of Waters. The interests of the adoptee were thoroughly presented by those who favored the adoption and those who opposed it. The testimony of the adoptors was that they and their five children had developed great affection for the adoptee and that it was the desire of all of them that she become a permanent member of the family. They stated that they were both employed and were able and willing to provide for the adoptee a suitable home and the care and education essential for her development in a normal family setting.

The Social Rehabilitation Administrator, to whom the petition for adoption was referred, reported to the court his

Evaluation . . . that adoption is in adoptee's best interest. According to all references adoptee has made an excellent adjustment. She is happy and looking forward to using petitioners' name legally. Petitioners have accepted adoptee and given her love and affection. They have provided her with a good home and have tried to help her adjust to the unpleasant circumstances that occurred in the last few years. She is fully accepted by all of the petitioners' children and seems totally integrated into the family.

The recommendation of the Administrator was that the petition be granted.

Appellant, having been released from prison, testified at the hearing as to the reason for his opposition to the adoption. He stated that the adoptee was his only living child,[4] and he sought to avoid termi-

---

2. As a result of post-sentence proceedings, the conviction was vacated on double jeopardy grounds, and after some seven years of incarceration, appellant was released on March 29, 1976.

3. The decedent left an estate in the form of insurance benefits payable to Robert Waters and the adoptee. On June 1, 1973, Waters was appointed guardian of the adoptee's share, which was deposited with the Guardian Clerk

of the Bronx County Surrogate Court, and any withdrawal of the funds is subject to order of that court. As of March 24, 1976, the adoptee's share was $13,895.00.

4. Appellant had another daughter, who at age 11 was abducted, raped and murdered under mysterious circumstances. Appellant was arrested as a suspect, but it does not appear that he was ever indicted.

nation of his parental rights. He conceded that he was unable to provide a home or support for the adoptee since he had been rearrested on other criminal charges, including conspiracy to commit murder, and assault. While he was adamant in his refusal to consent to the adoption, he expressed the desire that the adoptee remain in the home and legal custody of the adoptors since she appeared to be happy. Waters, the stepfather, then withdrew both his petition for adoption and opposition to the adoptors' petition.

At the conclusion of the hearing and after the court had talked to the child in chambers, it made detailed findings of fact respecting the suitability of the child for adoption, the character of the adoptors and the quality of the family environment they were prepared to provide. On the basis of these findings, the court concluded that the best interests of the child would be served by the adoption and that appellant's consent had been withheld contrary to her best interests. The court accordingly granted the petition for adoption and entered an appropriate order establishing the relationship of parent and child between adoptors and adoptee.

The scope of our review of this record is controlled by D.C.Code 1973, § 17–305, which reads in pertinent part:

> When the case was tried without a jury [this] court may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it.

■ In our opinion there was "clear and convincing" evidence to support the court's findings that the child involved was suitable for adoption, that the adoptors were fit, able and willing to provide a proper home and family environment conducive to her normal development, and that the adoption would serve the best interests of the child. *See In the Matter of Adoption of J.S.R.,* D.C.App., 374 A.2d 860, 864 (1977). We cannot say in the face of this record

that the findings were clearly erroneous, nor can we say that the court was plainly wrong in concluding that appellant's consent was withheld contrary to the adoptee's best interests. *See* D.C.Code 1973, § 16–304(e). *See also In re Adoption of a Minor,* 92 U.S.App.D.C. 163, 204 F.2d 55 (1953).

■ Appellant urges that the Family Division should have appointed counsel to represent the interests of the adoptee. A similar contention has been made and consistently rejected by courts in this jurisdiction. *See Boone v. Boone,* 76 U.S.App.D.C. 399, 132 F.2d 14 (1942); *In re Adoption of a Minor,* 74 App.D.C. 50, 120 F.2d 720 (1941). In the latter case, the court said:

> There is no requirement that there must be one person, such as a guardian ad litem, representing all possible interest of the adoptee. Often, as here, adverse parties will present fully the adoptee's interests. [*Id.* at 51, 120 F.2d at 721.]

In the case at bar, all of the interests of the adoptee were presented by witnesses who favored and those who opposed the adoption. In addition, the trial court conducted a meaningful interview with the adoptee in chambers. As we said in *In re Adoption of a Female Infant,* D.C.App., 237 A.2d 468 (1968), in an adoption proceeding the court's primary concern is the best interests of the child involved. Satisfied after our review that the best interests of the adoptee were served, we affirm.

*So Ordered.*