In the Matter of the Petition of J. O. L. II, for the Adoption of Minor Children.

Appeal of Eugene JOHNSON III.

No. 14014.

District of Columbia Court of Appeals.

Argued Sept. 21, 1979.

Decided Dec. 10, 1979.

Rehearing and Rehearing En Banc Denied March 27, 1980.

Edward L. Genn, Washington, D. C., for appellant.

Hal Witt, Washington, D. C., with whom Janice S. Pohl, Washington, D. C., was on brief, for appellee.

Before KELLY, FERREN and PRYOR, Associate Judges.

PRYOR, Associate Judge:

Over the objection of appellant, the natural father of two children, the trial court granted a petition for the children's adoption by the stepfather. Appellant appeals, asserting that (1) the "best interests of the child" standard of D.C. Code 1973, § 16–304(e) is substantively and procedurally unconstitutional as applied to a natural parent; and that (2) the trial court erred in concluding there was clear and convincing evidence in the record to reach a conclusion that adoption by appellee is in the best interests of the children. After reviewing the case, we do not find that the court's judgment is erroneous or without evidence to support it, *Petition of Douglas,*

D.C.App., 390 A.2d 1, 3 (1978), therefore, we affirm.

Appellant and the children's mother were married in 1961. The couple had two children, the adoptees, one on October 28, 1964, the other on January 27, 1967. The parents separated in 1967, and were divorced on June 28, 1968. Custody of the children was awarded to the mother and by agreement, appellant was obliged to make monthly child support payments.

On April 25, 1969, the mother and appellee were married and began living together with the adoptees. In October 1972, a child was born to the couple. The three children, appellee and his wife presently live together as a family unit.

Appellant is a forty-year-old experimental psychologist. After his divorce from the adoptees' mother in 1968, he visited his children regularly until 1970.[1] As a consequence of a continuing dispute between appellant and the children regarding visitation, appellant stopped visiting the children. Attempts were made to resolve the problem, but the parties could not reach agreement. Thereafter, appellant brought an action in court and was subsequently granted visitation privileges. While this matter was pending in court, appellant attempted on several occasions to visit his children but encountered considerable resistance from them. Recognizing that his visits were upsetting the children, appellant decided to stop visiting them until they were mature enough to understand the situation.

In March of 1977, having had no communication from appellant since October 1972, the children's mother received a phone call from appellant requesting a photograph of the children. This prompted consultation with a child psychiatrist. Not long afterwards, this action was instituted.

The trial court conducted an extensive hearing on the petition for adoption. The court heard from the children (*in camera*), the natural parents, and the stepfather. Witnesses testified about the interaction of the children with the appellee and their relationship with their natural father. A child psychiatrist stated his views as to the mental health of the children.

The court found that both of the adoptees viewed appellee as their "real father" and that he had become the psychological parent of the children. There was evidence that the children were under extreme emotional stress as the result of being legally obligated to visit with their natural father, but not desiring to do so. There was some question as to the appellant's mental health and his illegal use of drugs.

Acknowledging that the appellant at no time abandoned his children or otherwise abused them, the trial judge nevertheless concluded that the father's consent to their adoption by appellee was being withheld contrary to the children's best interests.

## I.

We are concerned with a statute which, in pertinent part, reads as follows:

> The court may grant a petition for adoption without any [consent from natural parent(s)] . . . when the court finds, after a hearing, that the consent or consents are withheld contrary to the best interests of the child. [D.C.Code 1973, § 16–304(e).]

We previously upheld the constitutionality of this statute in *In the Matter of Petition for Adoption of J. S. R.*, D.C.App., 374 A.2d 860 (1977). Appellant attempts to distinguish the facts in this case by arguing that in *J. S. R., supra,* this court ruled on the facial constitutionality of the statute. In this instance, appellant requests that we rule on the constitutionality of the statute as applied to a natural parent. While we recognize that this distinction can properly be drawn in interpreting some statutes, we find that in this instance the argument is, in large measure, circular in nature. To argue that the adoption of a child without the consent of a natural parent, pursuant to

---

1. This period of visitation was interrupted briefly when, in August 1969, appellant was hospitalized for approximately twelve days for mental illness. Thereafter, in September 1969, appellant began visiting the children again.

a statutory standard of "best interests of the child," is defective constitutionally is to return to the issues raised and discussed in *J. S. R., supra.*

In *J. S. R., supra,* as in the instant case, it was the natural parent who questioned the constitutionality of § 16–304(e). While the appellant in that case did not specifically challenge the statute as applied to a natural parent, in reaching our conclusion that § 16–304(e) was not unconstitutionally vague, we noted, with approval, that the "best interest of the child" standard has been applied "in custody disputes between parents, and between parent and non-parent [as well as] . . . in child neglect cases . . . ." *J. S. R., supra* at 863 (footnotes omitted). We see no reason to deviate from this standard in cases where natural parents challenge the adoption of their child by a stepparent, even where there is no showing of abandonment and custody is not an issue in the case. The underlying objective is the same and that is to arrive at an arrangement that will be in the best interest of the child. This arrangement may require that the court (1) leave circumstances as it finds them, (2) change the custody of the child, or (3) grant a petition for adoption. The arrangement will be that which the trier of the fact finds to be in the best interest of the child.

■ We have previously recognized[2] that there is no precise formula for determining what is best for the child. Circumstances, foreseeable and unforeseeable, will vary across a wide spectrum. Experience has shown that it would probably be unwise to attempt to fashion a standard which would likely be more specific but also less flexible. In *J. S. R., supra* at 863, we said:

> To say that such standard lacks precise meaning is not to say that it is without

content and bounds . . . We think it is plain that the standard "best interest of the child" requires the judge, recognizing human frailty and man's limitations with respect to forecasting the future course of human events, to make an informed and rational judgment . . . .

The cumulative lesson of this approach is that it cannot operate with pinpoint precision but, more importantly, does allow the trial judge to evaluate the persons involved and the choices available. In this instance the trial judge applied the statute by considering at least the following factors: (1) questions of family stability, (2) present and future effects of adoption or non-adoption on the child, (3) interaction between the child and the contestants, (4) who the child perceives as his or her psychological parent, (5) the child's adjustment to his or her living situation, school, and community, and (6) mental and physical health of all interested parties.

Accordingly, we find no merit to the contention that the statute was unconstitutionally applied.

## II.

As an additional ground for reversal, appellant urges that the trial court erred in concluding there was clear and convincing evidence in the record from which it could reach a conclusion that the adoption by appellee is in the best interest of the children.

■ During the course of a three-day hearing on the petition for adoption, the trial court heard from all interested parties, observed the demeanor of the witnesses and interviewed the adoptees in his chambers. The court found that the adoptees live in the home of their natural mother and stepfather both of whom assume an active role

2. In *Bazemore v. Davis,* D.C.App., 394 A.2d 1377, 1383 (1978), this court stated that:

A norm is ill-suited for determining the future of a unique being whose adjustment is vital to the welfare of future generations . . . [I]t is not asking too much to demand that a court, in making a determination as to the best interest of a child, make the determination upon specific evidence relating to that child alone . . . magic formulas have no place in decisions designed to salvage human values . . . [T]he trial courts shall decide the delicate question of what is the child's best interests solely by reference to the facts of the particular case. . . .

See also: *In re N. M. S.,* D.C.App., 347 A.2d 924 (1975); *Coles v. Coles,* D.C.App., 204 A.2d 330 (1964).

in the supervision and development of the children. The natural mother and stepfather love and care for the children as they do the child of their marriage.

In reaching the conclusion that adoption was in the best interest of the children, the trial court noted:

> Respondent for five years failed to exercise his right to visit. A failure he stated was based on his own concern because he recognized the emotional disturbance that his visits created [sic]. Nevertheless, he argues that he should be allowed to retain this right, in light of all the other benefits it would deny the children, so he may force the children from the "sheltered cocoon" in which they exist and into the real world to acknowledge him as their father. There is merit in the contention that these children should acknowledge respondent's love for them as their natural father, but the course of action recommended to achieve that result is dubious at best. When viewed from the children's point of view, the choice is between giving final security to the family unit of which these children are in every way an integral part or leaving them to wander upon a course of uncertainty in the hope that someday they will be able to accept the benefit from respondent's love. The past experience suggests, and respondent admitted that that hope is a slim one. Based on this record, a ruling favoring the adoption is warranted. [Mem. Opinion and Order at 12.]

We are satisfied from a review of the record that the court's judgment is not erroneous or without evidence to support it.

*Affirmed.*