Gloria SHELTON, Appellant,

v.

Christopher BRADLEY, Appellee.

No. 86–184.

District of Columbia Court of Appeals.

Argued Dec. 5, 1986.

Decided May 29, 1987.

Joseph P. Costa, Law Student, with whom Joan H. Strand, Supervising Atty., Washington, D.C., and Lisa Fishman, Law Student, were on the brief, for appellant.

Linda J. Miller, with whom Christopher J. Herrling, Washington, D.C., was on the brief, for appellee.

Before NEWMAN, BELSON, and TERRY, Associate Judges.

TERRY, Associate Judge:

This is a dispute over the custody of a child between the child's father and maternal grandmother, which arose after the death of the child's mother. The trial court, after a hearing, entered an order awarding permanent custody to the father, from which the grandmother now appeals. We affirm the award of custody to the father.

## I

On April 18, 1985, Darrena Shelton was shot to death by her landlord. Her mother, Gloria Shelton, was slightly wounded in the same incident.[1] Darrena Shelton had two daughters. The older daughter, Lorena Bradley, who is the subject of this custody dispute, was nine years old at the time of her mother's death. Lorena's father, Christopher Bradley, was never married to Darrena Shelton, but the trial court found that Lorena lived or visited with her father "for substantial periods of time" prior to

1. The landlord was arrested and later convicted of first-degree murder while armed. An appeal from that conviction is pending before this court.

her mother's death, and that "Christopher Bradley and Darrena Shelton did live together on some occasions."

In April 1985 Lorena was living with her mother and her younger half-sister Ebony in an apartment in Northwest Washington. On the day of the shooting, Lorena telephoned her father and told him what had happened. He immediately went to the apartment, picked up Lorena and Ebony, and took them to the police station, where they found Gloria Shelton in tears. In the aftermath of these events, Mrs. Shelton assumed physical custody of both girls and took them into her home. Lorena visited regularly with her father during the ensuing weeks, although there was some friction between Mr. Bradley and Mrs. Shelton over these visits.

On June 20, two months after the shooting, Mr. Bradley filed a petition for a writ of habeas corpus, challenging Mrs. Shelton's custody of his daughter Lorena. The writ was issued, and a hearing was held at which both parties testified. At the end of the hearing, the court called counsel to the bench and told them that it was considering the possibility of entering a permanent custody order. It then awarded temporary custody to Mr. Bradley and directed both counsel to submit memoranda by July 22 on the issue of permanent custody. Mr. Bradley filed a memorandum as directed, but Mrs. Shelton chose instead to file a motion "for a hearing on custody" and for an order granting her "reasonable rights of visitation" *pendente lite.* On December 27, 1985, the court entered an order awarding permanent custody of Lorena to her

father, Christopher Bradley, subject to modification "only if there should be a change in circumstances warranting such modification."

## II

This case is controlled by D.C. Code § 21–101(a) (1981), which provides:

> The father and mother are the natural guardians of the person of their minor children. When either dies ... the natural guardianship of the person devolves upon the other.

This statute creates a strong presumption that, upon the death of one parent, the surviving parent will have custody of any minor children. Although the presumption is rebuttable,[2] it can be overcome only by clear and convincing evidence of abandonment, unfitness, or other circumstances which render the parent's custody detrimental to the best interests of the child. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re M.M.M.,* 485 A.2d 180, 184 (D.C.1984); *In re K.A.,* 484 A.2d 992, 995 (D.C.1984); *cf. In re J.S.R.,* 374 A.2d 860, 864 (D.C.1977). The trial court here found that the father and the maternal grandmother were both "fit and capable of caring for Lorena [Bradley]." Because the evidence amply supports that finding, and because the record does not contain clear and convincing evidence that remaining in her father's custody would be against Lorena's best interests, the statutory presumption necessarily tips the balance in favor of the father.[3]

---

**2.** D.C.Code § 21–101(b) (1981) authorizes a court of competent jurisdiction, notwithstanding the presumption in favor of the natural parent, "to appoint another person guardian of the children when it appears to the court that the welfare of the children requires it."

**3.** This court has held in several older cases that "one who would withhold a child from its natural parent has the burden of proving that the natural parent is unfit to have custody and that the child's welfare compels awarding custody to the non-parent." *Johnson v. Lloyd,* 211 A.2d 764, 765 (D.C.1965); *accord, Jackson v. Fitzgerald,* 185 A.2d 724, 725 (D.C.Mun.App.1962); *Davis v. Jurney,* 145 A.2d 846, 850 (D.C.Mun. App.1958); *see also Rutledge v. Harris,* 263 A.2d

256, 257 (D.C.1970). More recently, however, we have held that a showing of parental unfitness is not required even in cases involving absolute termination of parental rights, not just custody; the dispositive factor is the best interests of the child. *In re K.A., supra,* 484 A.2d at 997–998; *In re J.S.R., supra,* 374 A.2d at 863–864; see *Quilloin v. Walcott,* 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978). We see a potential conflict between these two lines of cases: if unfitness need not be proved even in a termination-of-parental-rights case, then it seems illogical to require such proof when only the custody of a child is being decided. We need not resolve this conflict in the case at bar, however, since we base our holding on

Mrs. Shelton's claims of error are mainly directed to the procedure by which the court awarded permanent custody to Mr. Bradley. It has long been recognized in this jurisdiction, however, that a habeas corpus proceeding is an appropriate means of resolving a child custody dispute. *See Head v. Robinson,* 494 A.2d 1305 (D.C. 1985); *Bell v. Leonard,* 102 U.S.App.D.C. 179, 251 F.2d 890 (1958); *Holtsclaw v. Mercer,* 79 U.S.App.D.C. 252, 145 F.2d 388 (1944); *Beall v. Bibb,* 19 App.D.C. 311 (1902). Mrs. Shelton's arguments to the contrary are without merit, particularly in light of the statute which expressly provides that the court hearing a habeas corpus case of this kind "shall determine which of the contesting parties is entitled to the custody of the person ... detained, and commit the custody of the person to the party legally entitled thereto." D.C. Code § 16–1908 (1981).[4]

The real issue in this case is whether the trial court had enough facts before it to exercise its discretion properly in awarding custody to either party. *See Johnson v. United States,* 398 A.2d 354, 364 (D.C. 1979). The court held a hearing at which four witnesses, including both parties, testified at length about Lorena's relationships with her father, her grandmother, and other family members. It then requested each party to file a memorandum on the question of whether a permanent custody order should be entered. Unfortunately, the court declined to talk to Lorena, the minor child, although she was present, and at nine years of age was undoubtedly capable of expressing her feelings about her father and her grandmother, as well as her thoughts on the issue of custody. The court's refusal to hear from the one person most directly affected by these proceedings is difficult for us to fathom. Further, the court refused to order a home visitation by a representative of the Department of Human Services, which would have been not only helpful but highly desirable. Despite these lapses, the evidence plainly supports the finding that both the father and the grandmother were "fit and capable of caring for Lorena." There was no evidence at all that Lorena's welfare required the appointment of a custodian other than her father, and without such proof the grandmother could not prevail. *See* D.C.Code § 21–101(b), *supra* note 2. Thus we are satisfied that the court did not abuse its discretion in awarding custody to the father. *See Jackson v. Fitzgerald, supra* note 3; *Bell v. Leonard, supra,* 102 U.S. App.D.C. at 183–184, 251 F.2d at 894–895; *Beall v. Bibb, supra.*

■ Finally, Mrs. Shelton argues that the court erred in making the temporary custody order permanent without a further evidentiary hearing. She alleged in her motion below, filed after the award of temporary custody, that her counsel had not had sufficient advance notice of the habeas corpus hearing, and that she was therefore unable to marshal the evidence she needed to oppose the petition. She also asserted that if she were given an opportunity to present further testimony, she would show that Mr. Bradley was incapable of providing an adequate home for Lorena. Her motion went on to say:

> Respondent will be able to rebut petitioner's testimony that he supported the child and that the child lived with him through the public assistance records of the D.C. Department of Human Services. These records will indicate that Darrena Shelton was receiving public assistance for the child throughout the child's life and that Darrena Shelton's address was that of the respondent [Gloria Shelton] or another family member.

We reject Mrs. Shelton's argument for two reasons. First, even assuming that the proffered public assistance records would show what Mrs. Shelton alleged they would show, they would not be sufficient to overcome the strong statutory presumption in

---

a specific statute and on the presumption that arises from it.

**4.** We specifically reject Mrs. Shelton's contention that the trial court erred in failing to follow the requirements of D.C.Code §§ 16–911 and 16–914 (1981). Those statutes are intended only for custody disputes between parents involved in divorce proceedings; they do not apply to this case.

favor of the natural parent. The fact that Darrena Shelton never listed Christopher Bradley's address as her own does not establish that she did not live with Mr. Bradley at least "on some occasions," as the trial court found, nor does it prove that Bradley neglected his daughter or that his appointment as custodian would not be in her best interests. The same can be said of the fact that Darrena Shelton received public assistance: it simply does not prove that Bradley failed to support the child. Second, and more significantly, no custody order is ever really permanent. Until the child reaches majority, a custody order is always subject to reconsideration in light of changed circumstances. We note that the trial court in its order expressly stated that, upon a showing of changed circumstances, the award of custody could be modified. Even now, if appellant Shelton can demonstrate that Mr. Bradley is not providing adequate care and support for his daughter, she can go back to the court and seek appropriate relief.

*Affirmed.*