936 A.2d 316 (2007)
In re M.L.P., C.B., Appellant.
In re M.L.P., C.B., Appellant.
In re S.M., M.L.P., Appellant.
Nos. 04-FS-366, 04-FS-367 and 04-FS-581 to 04-FS-584.
District of Columbia Court of Appeals.
Argued February 24, 2005.
Decided November 29, 2007.
*317 Pamela H. Roth, Washington, DC, appointed by the court, for M.L.P.
David H. Dupree, Knoxville, TN, for C.B.
Elisa Long, for S.M.
Charles H. Fitzpatrick, Washington, DC, filed a statement in lieu of brief for W.M.
Virginia R. Stith, Marlow Heights, MD, filed a statement in lieu of brief for G.F.
Marc E. Miller, Washington, DC, filed a statement of lieu of brief of Guardian Ad Litem.
*318 Stacy L. Anderson, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, and Edward E. Schwab, Deputy Attorney General, filed a brief, for the District of Columbia in Nos. 04-FS-366 and 04-FS-367.
Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Edward E. Schwab, Deputy Attorney General, and Stacy L. Anderson, Assistant Attorney General, filed a statement in lieu of brief in Nos. 04-FS-581, 04-FS-582, 04-FS-583, and 04-FS-584.
Before WASHINGTON, Chief Judge,[*] WAGNER and SCHWELB, Senior Judges.[**]
PER CURIAM:
These consolidated appeals relate to the adoption of four children of appellant, C.B., their biological mother. The two older children, R.B. (born June 29, 1991) and G.B. (born February 23, 1993), were adopted by M.L.P. with whom they had been living since August 1998. The final decrees of adoption were docketed on August 26, 2003, and no appeals were filed. After these adoptions were finalized, C.B. filed a motion to set aside the adoptions pursuant to Super. Ct. Adopt. R. 60. Concluding that it was in the children's best interest for the decrees to stand, the trial court (Judge Puig Lugo) denied C.B.'s motion, and she appealed in In re M.L.P., Nos. 04-FS-366 and 04-FS-367. On appeal, C.B. argues that the trial court erred in denying her motion to invalidate the decrees.
The remaining appeals involve competing petitions of M.L.P. and S.M., the children's paternal aunt, to adopt C.B.'s two other children, P.B. (born June 20, 1999) and B.B. (born August 30, 2000). Both parents consented to the adoptions of P.B. and B.B. by S.M. Prior to trial, S.M. filed a motion to dismiss M.L.P.'s petitions on the ground that she had falsely represented that she was not married and had failed to join her husband in the petitions as required by law. After a hearing on the motion, the trial court (Judge Burnett) dismissed with prejudiced M.L.P.'s petitions. M.L.P. appealed in In re Petition of M.L.P., Nos. 04-FS-581 and 04-FS-582. In these appeals, she argues that the trial court erred in dismissing her petitions to adopt the children without holding a trial on the merits. M.L.P. also appeals from the final decrees of adoption of P.B. and B.B. by S.M., which were entered on May 25, 2004, in In re Petition of S.M., Nos. 04-FS-583 and 04-FS-584. However, she makes no argument for reversal in these cases aside from her challenge to the dismissal of her competing petitions. We affirm in all cases.

I.
The trial court entered final decrees of adoption of G.B. and R.B. by M.L.P. on August 13, 2003 which were docketed on August 26, 2003, after a trial in which the court determined that the consent of the children's natural parents should be waived.[1] No appeal was taken from these adoption decrees by anyone. On November 11, 2003, C.B., the children's birth mother, filed a motion to vacate the decrees after learning that M.L.P. had falsely represented during the adoption proceedings *319 that she was not married. While M.L.P. had indicated correctly in the petitions to adopt G.B. and R.B. that she was not married, she married thereafter and failed to amend the petition or join her husband as required by D.C.Code § 16-302 (2001). After a hearing, the trial court denied the motion, concluding that it was in the children's best interest that these adoption decrees stand. C.B. appealed.
B.B. and P.B., who were born to C.B. after G.B. and R.B. were removed from her care, were placed with M.L.P. on July 30, 2001.[2] In September 2001, S.M., the children's paternal aunt, filed petitions to adopt B.B. and P.B., and C.B. consented to the adoptions.[3] On January 12, 2003, M.L.P. filed competing petitions to adopt B.B. and P.B. in which she verified falsely that she was not married.[4] M.L.P.'s husband, J.M., did not join in the petitions. S.M. filed a motion to dismiss M.L.P's petitions, asserting that M.L.P. was married, had failed to join her husband, and had misrepresented her marital status to the court and the District of Columbia Child and Family Services Agency (CFSA). In her motion, S.M. stated that M.L.P.'s marital status was revealed after she and her husband were involved in a domestic dispute on October 14, 2003. S.M. also alleged that the children had been removed from M.L.P.'s home by the Prince George's County Child Protective Services after M.L.P. struck R.B. and G.B. with a belt, although the children were returned shortly thereafter with special services. M.L.P. made an oral motion to withdraw her petitions without prejudice.
The court held a hearing on S.M.'s motion to dismiss M.L.P.'s petition at which a social worker for all four children testified that M.L.P. was aware of the significance of her marital status to the adoption proceedings and that M.L.P. admitted withholding the information because she feared it would slow down the process. M.L.P. stated at the hearing that she was then separated from her husband, who was incarcerated. M.L.P. also admitted that there was an investigation of abuse regarding G.B. and R.B. The trial court found that the evidence established clearly and convincingly that M.L.P. knowingly concealed her marriage from CFSA social workers and from the court during the adoption process. It considered the children's ages and the importance of establishing permanency, security, and stability in their lives, the children's bond with M.L.P., and the uncertainties in M.L.P.'s life resulting from her false statements under oath, pending divorce issues, the unresolved allegations of abuse against her in Maryland and their potential impact on the investigations and recommendations to be made under the Interstate Compact. The trial court then concluded that it was in the best interest of P.B. and B.B. that M.L.P.'s petitions to adopt them be dismissed with prejudice. It denied M.L.P.'s petition to amend the petition for adoption to include her husband, J.M., as moot.[5] M.L.P. appealed.

*320 II.

C.B.'s Appeals, Nos. 04-FS-366 and 04-FS-367
C.B., the birth mother of G.B. and R.B., appeals from an order of the trial court (Judge Puig-Lugo) denying her motions to set aside the decrees of adoption of G.B. and R.B. by M.L.P. She contends that the failure to amend the adoption petitions after her marriage to include her husband, J.M., constitutes a procedural defect warranting setting aside the adoptions. The government argues that the trial court did not err in denying as untimely appellant's motion to vacate the adoption decrees. It contends that C.B.'s arguments are based upon fraud, and therefore, she was required to raise them within thirty days of the entry of the decrees, and she did not. M.L.P. argues that C.B. lacks standing to move to revoke the decrees unless the basis for revocation is related to the termination of parental rights. M.L.P. contends that the mother would have to show that but for M.L.P.'s alleged fraud on the courts, her parental rights would not have been terminated.[6]
"Upon motion filed no later than 30 days after the entry or denial of a decree [of adoption], and upon such terms as are just, the Court may enter or amend a decree based on fraud, misrepresentation, or newly discovered evidence." Super. Ct. Adopt. R. 60(b). The court may also set aside final adoption decrees for jurisdictional or procedural defects. Super. Ct. Adopt. R. 60(d). Such motions must be filed within one year of the date that the decree becomes final. Id. C.B. argued in the trial court that her motion to vacate the decrees should be granted because (1) the court lacked jurisdiction because M.L.P.'s husband had not been joined as a party; and (2) M.L.P. had perpetrated a fraud on the court by failing to disclose her true marital status or by misrepresenting that status affirmatively. The trial court rejected C.B.'s jurisdictional challenge, concluding that M.L.P.'s petition was accurate when filed and that her failure to amend the petition upon a change in her marital status did not deprive the court of jurisdiction. The trial court rejected the claim of fraud because a motion on that ground was untimely under Rule 60(b). To the extent that C.B. alleged fraud as the basis for her motion, there was no error in the trial court's determination that the motion was untimely. See Rule 60(b). Further, we find no error in the trial court's ruling that it had jurisdiction over the proceeding. See Appeal of A.H., 590 A.2d 123, 128 (D.C.1991) ("Subject matter jurisdiction concerns the court's authority to adjudicate the type of controversy presented by the case under consideration."). The court had statutory authority to adjudicate the controversy.
C.B. now argues that the adoption decrees should be set aside because of a procedural defect in the proceedings, which would make her claim timely under Rule 60(d). She contends that M.L.P.'s misrepresentation of her marital status and subsequent failure to amend the petition to include her husband as a party constitutes a procedural defect. It is difficult to discern why M.L.P.'s conduct constitutes a procedural defect instead of a fraud, as she claimed in the trial court, and she has not explained satisfactorily this change in her argument. In her brief, she focuses her argument on M.L.P.'s deception. Under the circumstances, we find *321 her argument in this regard unpersuasive and reject it.
The government argues that even assuming that C.B.'s motion asserts a procedural defect, and is therefore timely under Rule 60(d), there is no showing that the trial court abused its discretion in declining to set aside the adoptions decrees. Motions for relief under Super. Ct. Adopt. R. 60(d) are within the trial court's discretion, and we review its decisions thereon for an abuse of discretion. In re W.E.T., 793 A.2d 471, 477 (D.C.2002). Against that standard, we find no abuse of discretion. Here, the trial court declined to set aside the adoption decrees because it determined that the best interests of the children would be served by maintaining the decrees in effect. C.B. argues that the trial court erred in placing the children's best interests above protecting the integrity of the court. This argument ignores that in matters affecting the future of a minor child, the best interest of the child is the decisive consideration. In re L.W., 613 A.2d 350, 355 (D.C.1992) (citation omitted); see also In re A.B.E., 564 A.2d 751, 754 (D.C.1989) (noting that "[t]he legal touchstone in any proceeding to terminate parental rights is the best interest of the child, and that interest is controlling") (citations omitted). Therefore, the trial court could properly give consideration to the children's best interests.
Elsewhere in her brief, C.B. acknowledges that the overriding consideration should be the best interest of the children. She contends, however, that it was not in the children's best interests to remain with M.L.P. because she maintains them "in a household that seems to be a compendium of falsity." In this case, the trial court considered the best interests of the children, M.L.P.'s admitted misconduct in the proceeding, other negative information concerning her, and the integrity of the proceeding in determining not to set aside the adoptions. The court determined that it was in the best interest of the children to remain with M.L.P. in spite of her deception, given the difficult lives they had faced at such a young age and the stability they had experienced during the lengthy period that they lived with M.L.P. The trial court also considered that J.M., M.L.P.'s husband, was no longer an impediment to M.L.P.'s caring for the children in the future. We review the court's decision determining the best interest of the child for an abuse of discretion. In re D.R.M., 570 A.2d 796, 803 (D.C.1990). In applying that standard "our task is to ensure that the trial court has exercised its discretion within the range of permissible alternatives, based on all relevant factors and no improper factor . . .' and then'[to] evaluate whether the decision is supported by `substantial' reasoning . . . `drawn from a firm factual foundation' in the record." Id. at 803-04 (citations omitted); In re A.M., 589 A.2d 1252, 1257-58 (D.C.1991). The court must consider the totality of the circumstances. In re M.D., 758 A.2d 27, 33-34 (D.C.2000). It did so here. The court carefully considered the need of the children for permanency and their six-year relationship with M.L.P., their adjustment to the home, and all the other circumstances bearing upon the question, including the positions of the government and the guardian ad litem that the court not set aside the adoptions. We find no abuse of discretion in the trial court's ruling.[7]
*322 For the foregoing reasons, we affirm the decision of the trial court in the appeals numbered 04-FS-366 and 04-FS-367.

III.

A. M.L.P.'s Appeals, Nos. 04-FS-581 and 04-FS-582

M.L.P. argues that the trial court (Judge Burnett) erred in dismissing with prejudice her petitions to adopt P.B. and B.B. She contends that the dismissal was essentially a sanction for M.L.P.'s conduct in the case and that dismissal is not an available sanction under the court's adoption rules. She argues that even if the court had authority to dismiss her petitions, it could not do so without considering lesser sanctions. S.M. responds that the trial court had inherent authority to dismiss the petitions with prejudice in light of M.L.P.'s willful misconduct and the prejudice it caused other parties in the proceedings. She contends that the court dismissed the petitions only after considering less drastic alternatives and that the same result would have been reached had it dismissed M.L.P.'s petitions without prejudice, as M.L.P. requested, and denied her leave to amend. C.B. argues that M.L.P. violated multiple court rules for which the trial court could impose the sanction that it did.
The trial court has authority under Super. Ct. Adopt. R. 11 to impose appropriate sanctions whenever a party signs "a pleading, motion, or other paper," in violation of the rule.[8] In this case, it is undisputed that M.L.P. falsely represented her marital status in the petitions for adoption of P.B. and B.B. The adoption rule requires a petitioner to disclose his or her marital status. See Super. Ct. Adopt. R. 7(b)(15). M.L.P. also responded falsely in an answer to an interrogatory propounded by S.M. in which she was asked to state whether she had been married and to identify her husband. She signed her false answer, omitting any reference to her husband, under oath as required by Super. Ct. Adopt. R. 33 in violation of Super. Ct. Adopt. R. 11.[9] Contrary to M.L.P.'s argument, the trial court had the authority to impose a sanction under Rule 11 for her admittedly false statements in her petitions and in responding to interrogatories. As S.M. argues, the court also has inherent authority to impose sanctions upon a showing of bad faith. See Bredehoft v. Alexander, 686 A.2d 586, 589 (D.C.1996) (citing Chambers v. NASCO, Inc., 501 U.S. *323 32, 49, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)) (recognizing the court's inherent authority o impose sanctions for misconduct upon a showing of bad faith). "`Because of their very potency, inherent powers must be exercised with restraint and discretion.'" Id. (quoting Chambers, 501 U.S. at 44, 111 S.Ct. 2123) (other citation omitted). When the trial court imposes sanctions for a violation of Rule 11, this court reviews its decision for an abuse of discretion. Id. at 593 (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)) (other citations omitted). Similarly, this court reviews decisions involving sanctions imposed under its inherent authority for an abuse of discretion. Id. at 589.
M.L.P. argues that even if the court had authority to dismiss the case with prejudice as a sanction, such an extreme sanction should be imposed only in extraordinary circumstances after consideration of lesser sanctions. M.L.P. concedes that the court based its ruling on a finding of bad faith and the potential delay in finalization of the cases. However, she contends that the finding of bad faith was not supported by clear and convincing evidence. We disagree. The trial court found by clear and convincing evidence that M.L.P. knowingly misrepresented her marital status. In support of its conclusion, the court had before it M.L.P.'s admission of her deception in her petitions and interrogatory response. It also based its finding on the testimony of the social worker who handled the cases which showed M.L.P.'s deliberate concealment of the information and purpose to avoid any steps that might be taken to slow down the adoption process. The court also referenced M.L.P.'s continued efforts to conceal her marital status from the social worker by indicating that J.M., her husband, was a friend and leading her to believe that they might get married in the future.
In determining to dismiss M.L.P.'s petitions with prejudice, the court also considered less extreme action when it considered her motion to withdraw the petitions without prejudice and her request to delay the proceedings until she had an opportunity to file for and obtain a divorce. The court rejected such measures, having considered the best interest of the children. The best interest of the child is the decisive consideration in disputes affecting the future of minor children. L.W., supra, 613 A.2d at 355. "[T]he best interests of the child standard `does not contain precise meaning.'" In re D.I.S., 494 A.2d 1316, 1323 (D.C.1985) (quoting In re J.S.R., 374 A.2d 860, 863 (D.C.1977)). It is a flexible concept because multiple factors are involved. In D.I.S., we stated that the standard requires that the court
recognizing human frailty and man's limitations with respect to forecasting the future course of human events, to make an informed and rational judgment, free of bias and favor, as to the least detrimental of the available alternatives.
Id. (quoting J.S.R., 374 A.2d at 863).
Here, on the one hand, the trial court had before it the petitions of S.M., a related party who had the consents of the parents to adopt the children. That petition had been pending for some time. On the other hand, the court could not even consider M.L.P.'s petitions so long as she remained married and her husband did not join in the adoption petitions. See D.C.Code § 16-302 (1981) (providing, in pertinent part, that an adoption petition "may not be considered by the court unless petitioner's spouse, if he [or she] has one, joins in the petition. . . ."). M.L.P. had to request to withdraw her petitions once her marital status was revealed. At *324 that point, M.L.P. was only planning to file for divorce. Even if she followed through on her expressed intention, the time consuming process for investigation, report, and recommendation required by statute for adoptions would have to follow. See D.C.Code § 16-307 (1981). In light of the circumstances, the trial court appropriately considered the delay that would be occasioned by the uncertainties of M.L.P.'s situation with respect to her divorce and other unresolved issues concerning the allegations of abuse in her home, the impact on the children's lives, their ages and need for stability and permanency, as well as their bonds with M.L.P. On this record, we find no abuse of discretion in the trial court's ruling dismissing the petitions of M.L.P.[10] Therefore, we must affirm the decision of the trial court in Appeal Nos. 04-FS-581 and 04-FS-582.

B. M.L.P.'s Appeals, No. 04-FS-583 and No. 04-FS-584

M.L.P. also appeals from the final decrees of adoption of P.B. and B.B. by S.M. to which the children's natural parents consented.(Nos. 04-FS-583 and 04-FS-584). She argues that the trial court erred in dismissing her competing petitions to adopt the children without holding a trial on the merits of her petitions. M.L.P. had asked the trial court to withdraw her petitions after it was revealed that they did not conform to the requirements of the statute that her husband be joined. She makes no argument with respect to her appeals in the cases numbered 04-FS-583 and 04-FS-584 separate from her arguments addressed in the preceding section of this opinion. Since those arguments have been resolved against her, the judgment in these cases must also be affirmed.
Affirmed.
NOTES
[*] At the time of argument Chief Judge Washington was an Associate Judge of the court.
[**] At the time of argument Judge Wagner was Chief Judge of the court and Judge Schwelb was an Associate Judge.
[1] R.B. and G.B. had been in the foster care of M.L.P. since August 1998 after being removed from C.B.'s custody in a neglect proceeding.
[2] P.B. was removed from C.B.'s care in August 2000 following the abuse-related homicide of a sibling, and B.B. was removed from C.B.'s care at birth.
[3] R.D.'s father, G.F. is deceased; G.B.'s father is G.F., and W.M. is the father of B.B. and P.B.
[4] A trial date had been set earlier on S.M.'s petition, but the case was continued because of lack of notice to the parents.
[5] M.L.P. represented to the court that her husband was incarcerated in Maryland and that she was in the process of filing for a divorce.
[6] While M.L.P. asserts that C.B. lacks standing to file a motion for relief under Super. Ct. Adopt. R. 60 unless she can show that "but for the fraud, or procedural or jurisdictional defect, her rights would not have been terminated," the rule itself does not so indicate. However, in light of our disposition, we need not reach M.L.P.'s standing argument.
[7] C.B. argues that the trial court should have held a bifurcated hearing to determine (1) the validity of the adoption decrees, and (2) whether the children should remain with M.L.P. The government argues that this argument presupposes that fraud in itself invalidated the adoption decrees. We agree that the decrees remained valid unless set aside by the court. The question is whether the court should set them aside because of false information. That decision could not be made outside of the context of the best interest of the children. The trial court made its decision in that context. We find no basis for reversal because the trial court did not hold a bifurcated hearing as suggested by C.B.
[8] Rule 11 states in pertinent part that

the signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass, embarrass, or cause unnecessary delay or needless increase in the cost of litigation.
If a pleading, motion, or other paper is signed in violation of this rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee.
Super. Ct. Adopt. R. 11.
[9] M.L.P. stated that her husband had died in 1976. Her reference was apparently to a prior marriage.
[10] We are not persuaded by M.L.P.'s argument that the trial court considered matters not in evidence in reaching its decision.