434 A.2d 1004 (1981)
In the Matter of K. J. L., Appellee.
No. 80-832.
District of Columbia Court of Appeals.
Argued June 18, 1981.
Decided August 6, 1981.
Larry Sharp, Washington, D. C., appointed by the court, with whom Gregory J. Vogt, Washington, D. C., was on the briefs for appellant.
Harvey Schweitzer, Washington, D. C., with whom John Connelly and Jean Bower, Washington, D. C., were on the brief, for appellee.
Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., and Philip T. VanZile, III, Asst. Corp. Counsel, entered appearances on behalf of the District of Columbia and adopted the brief filed for appellee.
Before NEWMAN, Chief Judge, and KERN and HARRIS, Associate Judges.
HARRIS, Associate Judge:
Over the objection of appellant, who is K. J. L.'s natural mother, the trial court granted the motion of K. J. L.'s legal representative to terminate the parent and child relationship pursuant to D.C.Code 1978 Supp., §§ 16-2351 et seq. Appellant contends that: (1) her due process rights were violated because she did not have the opportunity to participate effectively in the proceeding; (2) the trial court applied § 16-2353 unconstitutionally by terminating her parental rights solely because of her mental illness; and (3) the trial court erred in not applying *1005 the "clear and convincing" standard of proof to the evidence. We affirm.

I
Appellant gave birth to K. J. L. on June 19, 1978, at D.C. General Hospital.[1] The identity of the child's father in unknown. When K. J. L. was less than three months old, she was admitted to Greater Southeast Community Hospital with injuries to three of her limbs, "probably as the result of a twisting motion imparted to the arm and legs." At the same time, appellant was admitted to St. Elizabeths Hospital with a diagnosis of schizo-affective schizophrenia. Appellant had spent approximately nine and one-half of the preceding ten years in that institution due to mental illness.[2]
The Corporation Counsel's office filed a neglect petition, alleging that K. J. L. had been abused and that "her parent is unable to discharge her responsibilities to and for said child because of hospitalization and mental incapacity." The attorneys for appellant and K. J. L. entered into a stipulation in January 1979, admitting the allegations set forth in the neglect petition. K. J. L. was committed to the care and custody of the Social Rehabilitation Administration. She had been placed in a foster home in October 1978, where she continues to reside.[3]
In July of 1979, counsel for K. J. L. filed a motion, pursuant to D.C.Code 1978 Supp., § 16-2354, to terminate the parent and child relationship.[4] Although the hearing on the motion was set for September 13, 1979, it did not take place until June 25, 1980, as a result of a number of continuances.[5] On July 1, 1980, the trial court entered on order granting the motion to terminate the parent and child relationship. The order was accompanied by detailed findings of fact and conclusions of law.

II
Appellant maintains that the trial court violated her due process rights by holding the hearing in her absence. In choosing to proceed without appellant in attendance, the trial court relied on D.C. Code 1978 Supp., § 16-2359(a). It provides as follows with respect to a proceeding regarding the possible termination of parental rights for certain neglected children:
A judge shall begin the adjudicatory hearing by determining whether all parties are present and whether proper notice of the hearing has been given. If the parent has been given proper notice but has failed to appear the judge may proceed in his or her absence.[[6]]
The record makes it clear that appellant had notice of the hearing, which had been calendared for over nine months.[7] Appellant's father appeared in the courtroom area on the morning of the hearing to inform counsel that appellant would not be attending the hearing because she was "ill" *1006 that day, but he did not stay to observe or to participate in the proceeding.[8]
Only after ascertaining that appellant had a lengthy history of mental illness, that she presently resided in the community (on convalescent leave from St. Elizabeths), and that she had received notice of the hearing, did the trial court elect to proceed in her absence.[9] Unquestionably a parent has a commanding interest in the outcome of a termination proceeding. Lassiter v. Department of Social Services, ___ U.S. ___, ___, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640 (1981).[10] Nonetheless, we find no abuse of discretion in the trial court's having proceeded without appellant. The situation which was faced by the trial court is provided for expressly in the statute. We find no error in the procedure followed.[11]

III
Appellant asserts that she was deprived of the Fifth Amendment's due process guarantees because the trial court terminated her parental rights solely due to the fact that she suffers from a mental illness. We find this argument meritless.
The termination statute provides that the trial court, "after giving due consideration to the interests of all parties," may enter a termination order upon a finding "that the termination is in the best interests of the child." D.C.Code 1978 Supp., § 16-2353(a). The statute supplies guidelines for the trial court's evaluation of the child's "best interests"a standard which, as we have recognized, does not lend itself to precise meaning. In re J. S. R., D.C.App., 374 A.2d 860, 863 (1977). Under the termination statute, the trial judge is to consider: (1) the child's need for continuity and care; (2) the physical, mental, and emotional health of all of the individuals involved; (3) the quality of the interaction and interrelationship of the child with his or her parent . . . and caretakers, including the foster parents; and (4) to the extent feasible, the child's opinion of his or her own best interests. D.C.Code 1978 Supp., § 16-2353(b)(1)-(4).[12]
The trial court's conclusions of law track the factors set forth in the statute and reflect a careful sifting of the evidence.[13] The principal focus of the trial court's concern quite properly was on K. J. L.'s best interests. D.C.Code 1978 Supp., § 16-2353(a). Cf. In re J. M. A. L. v. Lutheran Social Services, D.C. App., 418 A.2d 133, 134 (1980) (in adoption proceeding, "[o]ur highest priority must be to provide a stable environment for the child."). Of course, the trial judge did not disregard appellant's mental instability, but the record indicates that her condition was considered solely for the effect it had on her ability to interact *1007 with or to care for her child.[14]See In re B. K., D.C.App., 429 A.2d 1331 (1981). It is apparent that the trial court did not terminate appellant's parental rights solely because of her mental illness. Rather, the trial court arrived at its determination of how to serve K. J. L.'s best interests by considering the various factors listed in the termination statute.

IV
Appellant's final contention is that the trial court erred in not specifically employing the "clear and convincing" standard of proof in assessing the evidence presented in support of K. J. L.'s motion. As of the date of the trial court's order, the termination of parental rights statute did not establish a standard of proof. In its order, the trial court did not enunciate the standard of proof which it applied in deciding to grant the termination motion. Three days after the order was entered, D.C.Code 1978 Supp., § 16-2359 (which is the section governing the procedures in a termination proceeding), was amended by the addition of the following subsection:
(f) A judge may enter an order permanently terminating the parent and child relationship after considering all of the evidence presented and after making a determination based upon clear and convincing evidence that termination of the parent and child relationship is in the best interest of the child. If a judge does not find that sufficient grounds exist for termination, the motion for termination of the parent and child relationship may be dismissed[15] [27 D.C.Reg. 2904 (1980).]
Even examining the trial court's findings and conclusions in light of the subsequently enacted amendment, without doubt there was "clear and convincing" evidence to support the trial court's ultimate conclusion that K. J. L.'s best interests would be served by terminating appellant's parental rights. See Petition of Douglas, D.C.App., 390 A.2d 1, 3, cert. denied, 439 U.S. 1058, 99 S.Ct. 738, 58 L.Ed.2d 716 (1978). While the trial judge did not specify the standard of proof which he applied (and he was not obliged to do so), we are satisfied that clear and convincing evidence was presented to support the granting of the termination motion. See In re J. S. R., supra, 374 A.2d at 864. The record leads to but one conclusion: the trial court did not commit error in granting the motion for the termination of parental rights.
Affirmed.
NOTES
[1] Appellant was 31 years old when K. J. L. was born. At age 15, appellant had given birth to another child. That baby was placed for adoption.
[2] Appellant was not institutionalized continuously for that period of time. In the ten years and two months preceding the hearing on termination of parental rights, she had spent nine years and four months in St. Elizabeths, with eight months having been spent on convalescent leave.
[3] The foster parents have met appellant and are aware of her history of mental illness. They would like to adopt K. J. L. as soon as possible, and until that time they will continue to care for her in their home. At the hearing, K. J. L. was described as healthy, "adorable," and "very much" adoptable. A social worker testified that appellant's father was in favor of K. J. L.'s being adopted, stating in part: "[H]e had too much on him trying to meet the needs of his daughter [appellant]."
[4] Prior to the filing of that motion, counsel for K. J. L. also was appointed to serve as the infant's guardian ad litem.
[5] The case was continued at least eight times.
[6] The waiver of the appearance of two-year-old K. J. L. was accepted by the trial court and unobjected to by appellant's counsel.
[7] Appellant had been served personally by a marshal.
[8] The trial judge noted: "Well, this is a little bit thin in the sense that the man makes a statement and doesn't stay here, doesn't say what kind of illness it is."
[9] Earlier that week, appellant had been able to keep an appointment with a psychiatrist.
[10] See also Stanley v. Illinois, 405 U.S. 645, 648, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972) (parents entitled to hearing before children removed from their custody).
[11] Appellant, although not present, was represented ably by counsel throughout the hearing.
[12] That statute provides in full:

In determining whether it is in the child's best interests that the parent and child relationship be terminated, a judge shall consider each of the following factors:
(1) the child's need for continuity of care and caretakers and for timely integration into a stable and permanent home, taking into account the differences in the development and the concept of time of children of different ages;
(2) the physical, mental and emotional health of all individuals involved to the degree that such affects the welfare of the child, the decisive consideration being the physical, mental and emotional needs of the child;
(3) the quality of the interaction and interrelationship of the child with his or her parent, siblings, relative and/or caretakers, including the foster parent; and
(4) to the extent feasible, the child's opinion of his or her own best interests in the matter.
[13] The court did not solicit K. J. L.'s opinion of her own best interests, noting that "[d]ue to the child's extreme youth, i. e., two years old, her opinion obviously was not sought but the record shows no attachment to the biological mother."
[14] The record is replete with testimony about appellant's inability to care for herself, much less for a child. Illustratively, she urinates on herself, and the house where she resides when she is not in St. Elizabeths has "a lot of vomit around," is "cluttered with foodstuff," and "the odor was just beyond anyone's imagination for an adult home."
[15] We note that the Supreme Court recently granted a petition for a writ of certiorari in a case in which parental rights were terminated on a finding of parental neglect based on a "fair preponderance of the evidence" standard. In re John AA, 75 A.D.2d 910, 427 N.Y.S.2d 319 (1980), cert. granted sub nom. Santosky v. Kramer, ___ U.S., ___, 101 S.Ct. 1694, 68 L.Ed.2d 192 (1981).