**In re E.D.R.; S.S.R. & I.E.R., Appellants.**

**No. 00–FS–881.**

District of Columbia Court of Appeals.

Argued Feb. 27, 2001.

Decided May 17, 2001.

---

I.E.R., with whom S.S.R., was on the brief pro se.

Pierre E. Bergeron filed a statement in lieu of brief.

Before GLICKMAN and WASHINGTON, Associate Judges, and KERN, Senior Judge.

WASHINGTON, Associate Judge:

Appellants, S.S.R. and I.E.R., are the adoptive parents of E.D.R. With their petition for adoption to the trial court, appellants requested a correction of the date of birth listed on E.D.R.'s foreign birth certificate. The sole issue on appeal is whether the trial court erred in denying appellants' request to change the birth date on E.D.R.'s birth certificate where a preponderance of the evidence showed that the child was born approximately six months later than the birth date on the birth certificate. We reverse and remand.

## I.

Appellants filed a petition for adoption with the Superior Court on December 9, 1999 for E.D.R. On April 20, 2000, they filed a motion to correct E.D.R.'s date of birth on her birth certificate. In the motion, appellants asked the trial court to change E.D.R.'s birth date to November 1, 1998. They supported the motion with two declarations by Paul T. Peebles, M.D., a pediatrician, and Dana S. Greenwald, D.D.S., a pediatric dentist. The trial court denied appellants' motion, and they subsequently submitted a motion for reconsideration which was supported by their personal knowledge about E.D.R.

Appellants stated in their motion for reconsideration that on April 16, 1999, they traveled to China and adopted an abandoned Chinese baby girl, E.D.R. When

E.D.R was found, there was no identifying information. The birth certificate listed May 22, 1998 as E.D.R.'s date of birth, which would have made her eleven months old when appellants adopted her in China. While at the orphanage, appellants questioned E.D.R.'s date of birth because the baby looked substantially younger than eleven months. In response, the workers at the orphanage told appellants that they believe that E.D.R. was actually born on November 1, 1998. Further, the workers told appellants that the birth dates of abandoned girls listed on Chinese birth certificates are often incorrect.

In their initial motion to the court, appellants offered the affidavit of Dr. Peebles. Dr. Peebles' affidavit states that "[i]t is the experience of pediatricians that examine and treat adopted children from overseas that the dates of birth provided by certain foreign countries outside Western Europe for abandoned children are frequently inaccurate by several months." He concluded, with "reasonably scientific certainty," after examining E.D.R. that her date of birth was November 1, 1998. In addition, the medical opinion of Dr. Greenwald was included in appellants' motion to the trial court. Dr. Greenwald also concluded with "reasonable scientific certainty" that based on E.D.R.'s teeth and the structure and size of her jaw and oral cavity, she was probably born on or about November 1, 1998.

In addition, the trial court had in its possession a copy of a translation of E.D.R.'s Chinese birth certificate that was attached to appellants' petition for adoption for its review.

On May 17, 2000, the trial court entered an order denying appellants' motion. The trial court stated that the opinions of the doctors, "while informed and educated, are not, without more, definitive enough to grant [appellants'] motion." The trial court found that since E.D.R. was abandoned, "it is impossible to determine whether or not any factors in her early life may have contributed to [E.D.R.'s] development." Further, the trial court found that the date of birth could be several days before or after November 1, 1998. For these reasons, the trial court ruled that in the absence of "contrary evidence that is of absolute certainty," the Chinese birth certificate should be relied on.

Subsequently, the appellants' motion for reconsideration was denied. The final decree of adoption was entered on June 13, 2000, retaining E.D.R.'s May 22, 1998 birth date. The appellants filed an appeal to this court on July 7, 2000, challenging the trial court's failure to correct E.D.R.'s date of birth.

## II.

Although the trial court's findings of fact are usually reviewed under the clearly erroneous standard, this court in evaluating the trial court's exercise of discretion inquires into whether the trial court applied the proper burden of proof. See Murphy v. McCloud, 650 A.2d 202, 209–210 (D.C.1994); Santosky v. Kramer, 455 U.S. 745, 757 & n. 9, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). This court then determines if the trial court's decision was supported by substantial reasoning drawn from a firm factual foundation in the record. See In re D.I.S., 494 A.2d 1316, 1323 (D.C.1985). Further, this court will not sustain findings in which the trial court has "reject[ed] or fail[ed] to draw the inferences which we [find] inescapable from the record as a whole." Id. (quoting Alexander v. National Farmers Org., 687 F.2d 1173, 1203 (8th Cir.1982)). Lastly, when the issue "affect[s] the future of a minor, the decisive consideration is the best interest of the child." In re L.W., 613 A.2d 350,

355 (D.C.1992) (citing *In re Petition of J.O.L.*, 409 A.2d 1073, 1075 (D.C.1980)).

## III.

█ In its order, the trial court stated that "[d]ue to the lack of any contrary evidence that is of absolute certainty, these records must be relied on." Although it is not clear the exact standard the trial court employed, this statement appears to suggest that the trial court required the appellants to prove with absolute certainty not only that the birth date on the Chinese birth certificate was wrong, but also that November 1, 1998 was E.D.R.'s actual date of birth. Tellingly, by the trial court's own admission it is impossible for appellant to prove either with absolute certainty.

This court on multiple occasions has rejected absolute certainty as a standard of proof for civil cases. *See Sponaugle v. Pre–Term, Inc.*, 411 A.2d 366, 367 (D.C. 1980) (stating that absolute certainty is not required in expert testimony); *Bergman v. Parker*, 216 A.2d 581, 584 (D.C.1966) (applying reasonable certainty rather than absolute certainty to determine contract losses); *Linder v. Hyattsville Auto & Supply Co.*, 84 A.2d 541, 542 (D.C.1951) ("Evidence may be clear, satisfactory, and convincing without amounting to proof of absolute certainty."). Specifically, in cases involving medical testimony this court has held that medical experts only need to use medical certainty and not absolute certainty when stating their opinions. *See Psychiatric Inst. of Washington v. Allen*, 509 A.2d 619, 624 (D.C.1986).

█ Instead, in most civil cases this court requires only a preponderance of the evidence as the standard of proof. *See Green v. District of Columbia Dep't of Employment Servs.*, 499 A.2d 870, 877 (D.C.1985); BLACK'S LAW DICTIONARY 1183 (6th ed.1990) (defining a "preponderance of the evidence" as the "amount of evidence

necessary for the plaintiff to win in a civil case"). This court applies the clear and convincing standard of proof in civil cases, however, either when a statute dictates the standard to be used or when the issues have "far-reaching effects on individuals or where the consequences of a court's decision will be severe." *In re K.I.*, 735 A.2d 448, 463 (D.C.1999) (quoting *In re J.S.R.*, 374 A.2d 860, 864 (D.C.1977)). Thus, we have most often employed the clear and convincing standard in a civil case when there is a liberty or fundamental interest at stake, such as in cases involving termination of parental rights, *see In re J.M.C.*, 741 A.2d 418, 420–424 (D.C.1999), and do not resuscitate orders for a minor, *see In re K.I.*, 735 A.2d at 456, but not the situation presented here. *See also, e.g., Tyler v. United States*, 705 A.2d 270, 275–76 (D.C.1997) (determination of preventative detention); *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C.1995) (state of mind for a determination of punitive damages). In fact, our research has disclosed that similar issues as to a person's correct date or place of birth for purposes of determining his or her eligibility for certain benefits arise in many federal cases that employ the preponderance of the evidence standard. *See, e.g., Ly v. Secretary of Health and Human Servs.*, 629 F.Supp. 1181 (E.D.Mich.1986) (date of birth by a preponderance of the evidence for security income and hospital insurance benefits); *Hamid Kassem v. Secretary of Health and Human Servs.*, MOJ–Civ. Act. 78–24 (N.D.W.Va.1980) (date of birth by a preponderance of the evidence for social security benefits); *De Brown (Olga Nubia Ceja) v. Department of Justice*, 18 F.3d 774 (9th Cir.1994) (place of birth for citizenship purposes by a preponderance of the evidence).

In this case, there is no statute which describes the burden of proof needed to

change a person's birth date. In addition, the issue as to whether to change an abandon child's birth date does not involve a fundamental right that may have "far-reaching effects on individuals," nor does it lead to severe consequences. *In re K.I.*, 735 A.2d at 463. The change will simply allow E.D.R. to receive better medical care, start school at the appropriate age, and allow her to develop along side children her own age. These consequences do not negatively affect the rights of E.D.R., her parents, or the government. Thus, the trial court should have applied the preponderance of the evidence standard in deciding whether to correct E.D.R.'s birth date.

■■■ We have in the past articulated that the preponderance of the evidence standard "requir[es] the court to merely determine who has the most competent evidence." *In re J.S.R.*, 374 A.2d at 864. Black's Law Dictionary defines a preponderance of the evidence as "evidence which is of greater weight or more convincing than the evidence presented in opposition to it; that is evidence which is as a whole shows that the fact sought to be proved is more probable than not." BLACK'S LAW DICTIONARY, *supra*, at 1182. Applying this standard in the case *sub judice*, the greater weight of the evidence presented supports appellants' claim that the birth date listed on the Chinese birth certificate is incorrect.

The record reflects that both doctors, who are E.D.R.'s primary care physicians, concluded with reasonable scientific certainty that she was not born on May 22, 1998, but rather that she was born approximately six months later. Dr. Peebles expressed that his conclusion was based on several factors, including his observations of E.D.R. for over an extended period of time and his experience with thousands of other infants and toddlers. In particular, Dr. Peebles stated that he examined E.D.R.'s weight, size, and skeletal development, in addition to observing her gross and fine motor skills and language receptivity. Moreover, Dr. Peebles, cognizant that E.D.R. was abandoned before her adoption, declared that in his experience the "dates of birth provided by certain foreign countries ... for abandoned children are frequently inaccurate by several months," and that the six month disparity in this case was consistent with his prior experience. Dr. Greenwald reached the same conclusion as Dr. Peebles based on different factors, including "the time at which E.D.R.'s baby teeth erupted and the structure and size of her jaw and oral cavity." Further, appellants offered sworn testimony that workers at the orphanage where they adopted E.D.R. informed them that they believed E.D.R. to be born on November 1, 1998, and, consistent with Dr. Peebles' declaration, that the Chinese birth certificates of abandoned children are often incorrect.

Moreover, appellants argue that the Chinese birth certificate is unreliable on its face. The document entitled, "Notarial Certificate for Birth," is dated April 16, 1999. The entirety of the written language provides: "This is to certify that [E.D.R.], female, was born on May 22, 1998, and that [E.D.R.'s] natural parents and her birthplace are unknown." The birth certificate is notarized, and bears the seal of the Chinese government. First, the fact that the birth certificate states that the preparer does not know E.D.R.'s natural parents or birthplace generates some suspicion about the trustworthiness of the information in the document. Further, we observe that the official document is dated eleven months after E.D.R.'s alleged birth date; thus the birth certificate was not contemporaneously notarized and produced at a time close to her date of birth. In addition, the document is not

signed by any person other than the notary; thus it does not reveal the individual responsible for the source of the information, and there is no indication as to the basis that E.D.R.'s age was determined. We think that the aforementioned factors provide some evidence by which one could question the reliability of the birth certificate itself. Given the significant unknown factors in the birth certificate, i.e., E.D.R.'s natural parents and birthplace, it is not unreasonable to doubt the veracity of the only factual proffer in the document— E.D.R.'s date of birth. Accordingly, since the only contrary evidence in the record is the Chinese birth certificate, that is questionable on its face and discredited by other competent evidence, we hold that the greater weight of the evidence is in favor of correcting E.D.R.'s date of birth.

### IV.

Although E.D.R.'s exact date of birth cannot be determined, this should not prevent appellants from changing her birth date to one which better reflects her actual age. The two medical experts have stated with a reasonable degree of medical certainty that the estimated date of birth on the birth certificate is incorrect. Both medical experts and the workers at the orphanage believe that November 1, 1998 is a better reflection of E.D.R.'s birth. Thus, we remand this case with instructions for the trial court to enter judgment for the petitioners finding that the date on E.D.R.'s birth certificate is incorrect and, further finding that for all lawful purposes, November 1, 1998 is to be considered E.D.R.'s date of birth.

*So ordered.*