Elizabeth YSLA, Appellant,

v.

Daniel LÓPEZ, Appellee.

No. 93–FM–1198.

District of Columbia Court of Appeals.

Argued June 22, 1995.

Decided Nov. 7, 1996.

Barry L. Leibowitz, Wheaton, MD, with whom Erin P. Band was on the brief, for appellant.

Daniel M. López, pro se.

Before STEADMAN, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

This case presents us with the question whether and under what circumstances the Superior Court may award joint legal custody to the unmarried parents of a child.[1] We hold that joint legal custody is also a permissible arrangement in the context of unmarried parents, which may be ordered by the trial court in its discretion on the basis of articulated reasoning considering the relevant factors. We remand the case to give the trial court an opportunity to reconsider and articulate the reasons for its order in light of the relevant factors we identify in this decision, as well as any change in circumstances since the date of its original order.

## I.

Appellee Daniel López brought this action seeking physical and joint legal custody of the parties' minor child, B. Appellant Elizabeth Ysla counterclaimed, demanding sole physical and legal custody of B.

The parties do not appear to dispute the trial court's factual findings. López and Ysla have never been married to one another. B. was born to the parties in 1985, several years after their relationship began. Although B. is Ysla's only child, López has several other children from a former marriage who do not live with him but with whom he has maintained substantial parental ties.

The court found that López has taken an active interest in B. since her birth and has developed a mutually caring relationship with her. Furthermore, the court found that B. has a strong interest in spending time with her half-siblings. It appears, however, that because of López's itinerant nature, he and Ysla frequently lived apart and the court specifically found that since B.'s birth, Ysla

1. Subsequent to oral argument in this case, D.C. Act 11–202, the "Joint Custody of Children Act of 1996," was enacted. The Act expressly authorizes Superior Court to award joint custody in the context of marital divorce, annulment and post-divorce proceedings and sets out factors to be considered and the procedure within which to consider custody awards. D.C.Code §§ 16–911, –914 (1996 Supp.).

has been her primary day-to-day care-giver, has played the largest role in selecting her schools and ensuring her medical care, her socialization and her other physical needs. Moreover, the trial court found that Ysla and B. had developed a close relationship and that B. is well settled in her home with Ysla.

Evidence was presented concerning B.'s preference to live with her father, which the trial court credited as sincerely and deeply felt. The court also addressed the parties' relative financial resources and stability, finding that Ysla had a substantial and secure income and owned her own home, while López had a checkered job history and a history of evictions from rented homes.

A major issue at trial concerned one of the precipitants of the present action: Ysla's engagement to a Jewish man and her decision to convert to Judaism and consequently to introduce B. to the Jewish religion. During the time of their relationship, both López and Ysla were Catholics, and López apparently remains committed to that religion.[2] The court also found another source of conflict was Ysla's restricting López's access to B.

By the time of trial, the differences between the parties had become so serious and apparent that the court declared, "[t]he parents have made clear to this Court at least that there is no likelihood at all that they will cooperate on anything, on any issue at any time. That may change, but that clear position of opposing everything the other wants is not being missed by B." Nevertheless, by the conclusion of the proceedings, "it [was] absolutely plain [to the court] that ... no parent could want any child more than these two want B. Each one appears to genuinely want B. to be a part of their daily lives."

In its final order, the trial court awarded the parties joint legal custody and dictated a detailed arrangement under which Ysla has principal physical custody, but the child spends substantial time with López during weekends, holidays, birthdays and school vacation periods. On appeal, Ysla challenges only the portion of the order awarding joint legal custody.

## II.

Ysla challenges the trial court's award of joint legal custody on two grounds: First, Ysla asserts that the statute governing custody orders in the context of actions for marital separation and divorce precludes such an order. Second, Ysla contends that even if an order of joint legal custody may be permitted in some cases, the trial court abused its discretion in making such an order in the present case, where the trial court expressly found that the parties were unlikely to agree on anything concerning the child. We disagree with Ysla's first contention and hold that the trial court has discretion to award joint legal custody to the parents of a minor. We disagree as well that in the present case, an award of joint custody in the face of the finding that the parties are unable to communicate necessarily entails an abuse of discretion. We find, however, that the trial court has not provided sufficiently substantial reasoning to support its award of joint legal custody, especially given its finding concerning the parents' inability to communicate and cooperate with each other. Therefore, we remand to permit the trial court to reconsider its decision in light of this opinion and any changes in circumstances, and to "place on the record the specific factors and findings which justify any custody arrangement not agreed to by both parents." D.C.Code § 16–911(a–2)(6)(C).

Before discussing the merits, we pause to define two critical terms: "legal custody" and "physical custody." Legal custody refers to the authority and duty to make long-range decisions concerning the child's life, including education, discipline, medical care and other matters of major significance to the child's

2. The trial court addressed the issue concerning religion by holding that unless the religious practices of a parent threatened physical or serious psychological harm to the child, the court could not attempt to regulate a parent's exposure of the child to religion. The court found that nothing approaching the requisite showing appeared in the present case. Furthermore, the court does not appear to have been influenced in its decision by the professed religious beliefs and plans of either party. The only way in which the court took into account the religious difference was with respect to the acrimonious atmosphere the parties appeared to allow the difference to create. Neither party has challenged the court's handling of the issue.

life. *Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964, 967 (1986). Joint legal custody, therefore, refers to joint decision-making concerning long-range decisions. Physical custody comprises the residuum—physical control over the child and those decisions attendant to such immediate control.[3] *Id.* Although the decision authority allocated between a physical and a legal custodian may at times overlap—for example, if the need arises for emergency medical care—the short-term, tactical decisions made by a physical custodian should be made in a manner consistent with the long-term, strategic decisions made by the legal custodian. *Id.* 508 A.2d at 967 n. 4. Thus, decisions by the legal custodian may have a significant effect on the relationship between a child and a parent with even liberal physical custody.

### A.

■ The power of the Superior Court to adjudicate custody disputes between parties not married to one another stems from its general equitable powers, not from any particular statute. *Felder v. Allsopp,* 391 A.2d 243, 245 (D.C.1978); *Taylor, supra,* 508 A.2d at 968. *But see Shelton v. Bradley,* 526 A.2d 579, 581 (D.C.1987) ("It has long been recognized in this jurisdiction, however, that a habeas corpus proceeding [which is a proceeding at law] is an appropriate means of resolving a child custody dispute."). As the Maryland Court of Appeals noted in *Taylor, supra,* 508 A.2d at 968, the question is not whether the court has authority granted by statute but whether the legislature has sought to limit the court's inherent authority.

■ As a preliminary matter, we note that § 16–911, which concerns temporary orders during the pendency of an action for divorce or annulment, and § 16–914, which provides for permanent custody orders following a decree of divorce, are not directly applicable to this action between two people who were never married to each other, because those sections necessarily are addressed to custody matters arising between parties who are married to each other. *Shelton, supra,* 526 A.2d at 581 n. 4. Nonetheless, we think that the relevant statutes applicable to custody awards to married parents should be examined as representing the legislature's considered weighing of the competing rights among the parents of a child and the child regarding the assignment of the child's custody. If law is but the crystallization of a balance struck among competing policy objectives, and the legislature the body with primary responsibility for the resolution of conflicts among such goals and the proper means for achieving them, then we should be hard pressed to ignore its decisions thereon, unless there is reason to believe that the legislature would not wish the balance struck in one context to extend into others. Guided by the best interest of the child, therefore, we apply the same criteria to the award of custody to unmarried parents, particularly in a case such as this, where both parents have actively participated in the upbringing of the child. *See* D.C.Code § 16–911(a)(5) ("In determining the care and custody of a minor child, the best interest of the child shall be the primary consideration."); § 16–914(a)(3) ("In determining the care and custody of infant children, the best interest of the child shall be the primary consideration."). We are further supported by statutory language in the recent statutory amendments indicating that the legislature intends that the same factors and procedure apply to custody for children of unmarried parents as govern the award of custody for the children of married parents. D.C.Code §§ 16–911(a)(5), –914(a)(2) ("Unless the court determines that it is not in the best interest of the child, the court may issue an order that provides for frequent and continuing contact between each parent and the minor child or children and for the sharing of responsibilities of child-rearing and encouraging the love, affection, and contact between the minor child or children and the parents *regardless of marital status.*") (emphasis added).

---

**3.** Thus, "[w]ith respect to physical custody, there is no difference between the rights and obligations of a parent having temporary custody of a child pursuant to an order of shared [or joint] physical custody, and one having temporary custody pursuant to an award visitation." *Id.* 508 A.2d at 967.

We thus turn, first, to an examination of the relevant statute at the time that the court awarded joint legal custody. Ysla points to the use of a single word in D.C.Code § 16–911(a)(5) (1989), which at the time of the trial court's ruling provided in pertinent part:

> (a) During the pendency of an action for divorce, or an action by the husband or wife to declare the marriage null and void, where the nullity is denied by the other spouse, the court may:
>
> . . . .
>
> (5) determine *who* shall have the care and custody of infant children pending the proceedings. . . .

(Emphasis added.) [4]

According to Ysla, the legislature's use of the word "who" is necessarily singular. Hence, Ysla asserts that under the statute (at least as it existed at the time of the joint custody award in this case), the Superior Court must choose between the parties to a custody dispute. We think Ysla's objection is not well taken for several reasons.

We do not think that the statutory language existing at the time of the joint custody award in this case, prior to the recent adoption of express guidelines for the award of joint custody, supports the contention that the legislature previously disapproved of joint custody awards. "Who" means "what person or persons." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2611 (1971). Thus, it encompasses both singular and plural. Moreover, we are enjoined by D.C.Code § 49–202 (1990), enacted as part of the 1901 Code, to construe words as including both the singular and plural, "except where such construction would be unreasonable." In re M.M.D., 662 A.2d 837 (D.C.1995), we held that § 49–202 "means that the burden falls on those who would strictly construe the . . . statute to demonstrate persuasively why it

'would be unreasonable' " to use a more expansive meaning. *Id.* at 847. Ysla has offered nothing to discharge that burden, and we can think of no objection sufficient to render such a construction "unreasonable."

Moreover, in *Taylor, supra,* the Maryland Court of Appeals noted that although the power to grant divorce was conferred upon the court only by the legislature, the power to make child custody determinations is part of the inherent equitable jurisdiction of the court. 508 A.2d at 968. As such, the court held that "the authority to grant joint [legal] custody is an integral part of the broad and inherent authority of a court exercising its equitable powers to determine child custody." *Id.* Finding no affirmative legislative act limiting that power, the *Taylor* court held that the trial court retained the full scope of its equitable authority in the area of child custody. *Id.* at 968–70. Similarly, in the District of Columbia at the time of the joint custody award in this case there was no statute that expressly or impliedly limited the authority of the Superior Court to award joint legal custody. It is only in the recently enacted "Joint Custody Act of 1996" that the legislature has expressly delineated how such authority is to be exercised.

We reject the strict construction of the previously existing statute that Ysla proposes because it would preclude the trial court from awarding even shared physical custody, which has long been the practice, in that the statute did not differentiate between physical and legal custody. Thus, we believe that before amending the statute, the legislature did not restrict the flexible discretion that the Superior Court has long exercised in the area of child custody. *See, e.g., Galbis v. Nadal,* 626 A.2d 26, 27 (D.C.1993) (describing trial court order that "vested in [the mother] the power to make all final decisions concerning the boy but required her to consult with

---

4. Since judicial divorce was first authorized in the District in 1860, except for a single, seven-month interval, statutory provisions governing divorce in the District have authorized the court to order "who" shall have custody of the children of the marriage. Act of June 19, 1860, ch. 158, § 11, 12 Stat. 60; Rev. Stat., D.C. § 747 (1873); Act of June 30, 1902, ch. 1329, 32 Stat. 537; Pub.L. 88–241, § 1, 77 Stat. 561 (Dec. 23, 1963). Between January 1, 1902 and June 30, 1902, however, the law provided, "[t]he court may also determine *whether the husband or wife* shall have the care and custody of infant children pending the proceedings." Act of March 3, 1901, ch. 854, § 975, 31 Stat. 1346 (emphasis added). The Act of June 30, 1902, which amended many sections of the 1901 Code, replaced the italicized language with the word, "who."

[the father] before making any decision regarding their son's health, education, and welfare"); *Snow v. Snow,* 52 App. D.C. 39, 40, 280 F. 1013, 1014 (1922) (holding that shared custody arrangement ordered by trial court must be modified so that child would spend school year with one parent and vacation period with other parent).

We conclude that the trial court had inherent authority to award joint custody in a case in which the trial court determined that such custody was appropriate. Now that the legislature has clearly expressed the manner in which such authority is to be exercised, including a statutory presumption in favor of joint custody, the Superior Court's inherent authority must be exercised consistent with the statute. For the reasons expressed above, the same guidelines as are provided in the marital dissolution statute should be applied in the context of custody awards to unmarried parents.

## B.

■ Having determined that the trial court had authority to grant joint custody, we turn now to the factors considered in making such a determination. We are persuaded that, prior to the statutory amendments, the multiple factors identified by the *Taylor* court were key considerations in decisions regarding joint custody: capacity of the parents to communicate and reach shared decisions concerning the child's welfare; willingness of parents to share custody; fitness of parents; relationship established between the child and each parent; preference of the child; potential disruption of the child's social and school life; geographic proximity of parental homes; demands of parental employment; age and number of children; sincerity of parents' request; financial status of the parents; impact on federal or state assistance; benefit to parents; and other factors. *See Taylor, supra,* 508 A.2d at 971–74. We emphasize, however, the caveat the *Taylor* court itself gave as a preface to its discussion of the factors: "The following discussion of

factors particularly relevant to a consideration of joint custody is in no way intended to minimize the importance of considering all factors and all options before arriving at a decision." *Id.* at 970.[5]

■ The recent amendments providing for joint custody contain a list of nonexclusive factors similar to the ones identified in *Taylor.* D.C.Code §§ 16–911(a)(5)(A)-(Q), – 914(a)(3)(A)-(Q). The statute recognizes the benefit of maximum involvement by both parents and does not require that the parents agree to joint custody. There is a notable difference between *Taylor* and the statute, however, that is of particular relevance to this case. Unlike *Taylor,* which identified the parents' ability to communicate and reach joint decisions as the most important factor in determining whether joint custody is appropriate, *Taylor, supra,* 508 A.2d at 971, the statute does not rank any of the listed factors. To the contrary, the statute presumes that joint custody is in the best interest of the child except in cases of domestic abuse and similar intrafamily offenses. D.C.Code §§ 16–911(a)(5), –914(a)(3). Under both *Taylor* and the statutory amendments, however, the emphasis is on the trial court's reasoned discretion. In applying the new statutory considerations when making joint custody awards to unmarried parents, discretion should include recognizing that the fact that the parents are not married may have a bearing in the consideration of individual factors.

## C.

■ Finally, we turn to a review of the reasons underlying the trial court's award of joint custody. Because custody determinations are "intensely individual," resting on myriad facts gathered out of " 'a maze of conflicting testimony, usually including what one court called "a tolerable amount of perjury," ' " we accord great deference to the trial court's decision in such matters. *Prost v. Greene,* 652 A.2d 621, 625–26 (D.C.1995) (quoting *Coles v. Coles,* 204 A.2d 330, 331–32

---

**5.** As discussed below, the recent act on joint custody, see note 1, *supra,* added almost verbatim the factors identified in *Taylor* to the five factors previously listed in D.C.Code §§ 16–911

and –914. The pre-existing statutory provision made clear, however, as do *Taylor* and the recent act, that the listed factors are not exclusive.

(D.C.1964)). When reviewing custody determinations, "[i]n essence, this court looks to whether the trial judge has considered all relevant factors and no improper ones, and to whether her decision is then supported by substantial reasoning drawn from a firm factual foundation in the record." *Id.* at 626.

■ In this case, after making extensive findings of fact, the trial court explained its reasoning in the following sentence:

> In the end, considering the child's wishes, the wishes of the parents, everyone's interaction and interrelationship, the child's adjustment, the mental and physical health of all the parties, the good information, the bad information, the child's bastion of security, the parties' finances, their stability and their capabilities, it this Court's conclusion that physical custody of B. is and shall be awarded to her mother,[6] that joint legal custody is awarded to both parties.

The above-quoted passage provides this court only with a list of factors; it does not show why the trial court resolved in the way it did the considerable tensions which the findings of facts show existed among those factors. In particular, the court's finding concerning the parents' inability to communicate and cooperate with each other, at the time the joint custody award was entered in this case, was identified by *Taylor* as "most important" to an award of joint custody.[7] The articulation of the court's reasoning is important because it aids the appellate court in conducting its review and supplies to the parties information that may persuade them as to the correctness of the trial court's decision. Such express reasoning can also function as a guide to what changes in circumstances would or would not support a modification of the order.

On remand, the trial court should apply the factors and procedures that the statute now provides for the custody of children of married parents. This includes a requirement that "[t]he court shall place on the record the specific factors and findings which justify any custody arrangement not agreed to by both parents." D.C.Code § 16–911(a–2)(6)(C). We do not agree with Ysla's contention that, even if the decision were supported by substantial reasoning, on the facts as found by the trial court, the court necessarily abused its discretion in ordering joint legal custody. Ysla's argument in that regard focuses on the trial court's finding "that there is no likelihood at all that [Ysla and López] will cooperate on anything, on any issue at any time." She cites *Taylor, supra,* for the proposition that the parties' capacity to communicate and reach shared decisions "is clearly the most important factor in the determination of whether an award of joint legal custody is appropriate." 508 A.2d at 971. Thus, Ysla argues that the trial court's express finding of the parties' inability to cooperate precludes an award of joint legal custody in the present case.

As both *Taylor* and the statute make clear, however, no single factor, even one as important as the parents' ability to communicate and cooperate with each other concerning their child, is necessarily controlling in this case. Moreover, as noted, the statute does not rank this factor above any other in importance. Consideration of all factors, including the parties' ability to communicate, is committed to the discretion of the trial judge. Here, the trial court found that López had taken an active interest in B. since her birth, had developed a strong relationship with her, and that, he, like Ysla, wanted to have B. as a part of his daily life as much as any parent could.

A trial court may consider the interest of a parent in his or her relationship with the child in fashioning a custody order. Under both *Taylor* and the recent amendments to

6. The trial court also stated that its intention was "to maximize the amount of visitation" allowed to López. In a later written order, the trial court termed the physical custody arrangement "shared."

7. As noted above, the recent joint custody act does not rank this, or any, factor as "most important." Nonetheless, when the trial court finds a complete breakdown in the parents' ability to communicate and cooperate, as the trial court did in this case, the very force of the trial court's findings demands an explanation why an award of joint legal custody is in the child's best interest, since the essence of joint legal custody is shared decision-making.

the statute providing for joint custody, the interests of the parents are expressly recognized. D.C.Code § 16–911(a)(5)(B) and (P) (requiring trial court to consider in determining custody "the wishes of the child's parent or parents" and "the benefit to the parents"); *id.* § 16–914(a)(3)(B) and (Q)(same); *Taylor, supra,* 508 A.2d at 974.[8] Hence, a parent's interest in a relationship with his or her child should be accommodated, if it is possible to do so without an overriding risk to the child's best interest.

On remand, the trial court should consider the statutory factors, including the presumption in favor of joint custody. We note, however, that the statutory presumption in favor of "joint custody" does not specify whether it is to be joint legal or physical custody. If the trial court determines that López's relationship with B. can and should be accommodated, an award of joint legal custody is one of many ways in which it may do so. First, such an accommodation may not require any measure of legal custody; continuing frequent personal contact with the child may be sufficient to satisfy the particular relationship interests of the child and the father. Second, even if some degree of long-term decision-making authority is necessary and appropriate, that too can be accommodated in ways other than full joint legal custody. A requirement of consultation, rather than concurrence, could be imposed with respect to some long-term decisions. In those areas where the parents have shown a capacity and willingness to communicate and cooperate, decisions could be required to be made jointly; in other areas where communication and cooperation have proven difficult, however, decision-making could be committed to the discretion of a single parent. The possibilities are many and varied; the decision must, however, be committed to the reasoned exercise of discretion by the trial court, so that the decision may be tailored to fit the needs of each case. As both *Taylor* and the recent amendments to the custody statute recognize, many options are available to the trial court in finding an appropriate order to maximize the child's relationship with both parents.[9]

Therefore, we remand the case to permit the trial court to reconsider and articulate the reasons for its decision in light of the guidance that, for the first time, we have set out concerning the award of joint custody in the context of unmarried parents. Because a custody determination is never final and should reflect a current state of facts, the trial court should also consider any material developments since its original order.

*So ordered.*

---

8. In the District of Columbia, both statutes and the common law recognize the interest of a parent in his or her child. *See* D.C.Code § 16–304(b)(2) (1989) (requiring consent of natural parent before adoption may take place); *id.* § 21–101(a) (1989) (providing that "father and mother are the natural guardians of the person of their minor child"); *Bell v. Leonard,* 102 U.S.App. D.C. 179, 183–84, 251 F.2d 890, 894–95 (1958) (doubting whether fit mother could be deprived of custody of her child without her consent). Of course, the parent's right is not absolute, even in the absence of a finding of unfitness, and it is subordinate to the best interest of the child. *See* D.C.Code § 16–304(e) (permitting adoption without parent's consent if court finds that it is "withheld contrary to the best interest of the child"); *id.* § 16–911(a)(5) ("In determining the care and custody of minor children, the best interest of the child shall be the primary consideration."); *id.* § 16–914(a)(3) (same); *id.* § 21–101(b) (providing that court may "appoint another person [other than a par-ent] guardian of the children when it appears to the court the welfare of the children requires it"); *Bell, supra,* 102 U.S.App. D.C. at 184, 251 F.2d at 895 ("The welfare of the child and its best interests are nourished by and inevitably traced to the well-springs of the child's life with its mother.").

9. *See* D.C.Code § 16–911(a–2):

(1) A custody order may include:
   (A) sole legal custody;
   (B) sole physical custody;
   (C) joint legal custody;
   (D) joint physical custody; or
   (E) any other custody arrangement the court may determine is in the best interest of the child.

*See also Taylor, supra,* 508 A.2d at 970 ("The availability of joint custody, in any of its multiple forms, is but another option available to the trial judge.").