**W.D., Appellant,**

v.

**C.S.M., et al., Appellees,**

**B.T., Appellant,**

v.

**C.S.M., et al., Appellees.\***

Nos. 99–FM–1138, 99–FM–1299.

District of Columbia Court of Appeals.

Argued Jan. 14, 2004.
Decided Aug. 31, 2006.

* This appeal in a domestic relations proceeding was captioned originally in the names of the parties. This court, *sua sponte,* has changed the caption to use the parties' initials only because of the related neglect case.

Carol A. Blume, for appellant W.D.

Francis T. Lacey, Rockville, MD, appointed by the court, for appellant B.T.

Laird Hart, for appellees.

Before FARRELL, Associate Judge, and WAGNER,** and BELSON, Senior Judges.

WAGNER, Senior Judge:

Appellants, W.D. and B.T., appeal from an order of the trial court granting permanent custody of their minor son, K.T., to unrelated third parties, appellees, C.S.M. and E.T.S., a married couple. Appellees instituted the action by filing a complaint for custody in a domestic relations proceeding asserting as the basis for the court's jurisdiction D.C.Code §§ 11–1101(4) (2001)[1] (providing the Family Division of Superior Court with exclusive jurisdiction of actions seeking custody of minor children) and 16–4503 (specifying grounds for asserting jurisdiction in child custody cases). Guided primarily by statutory factors enumerated in D.C.Code §§ 16–911(a), –914 and D.C.Code § 16–2353(b) (termination of parental rights), the trial court granted appellees, who were serving as third party custodians in an ongoing neglect proceeding, permanent custody of the child in this domestic relations case (DR–3169–98c). Preliminarily, we conclude that the trial court exceeded its authority in awarding permanent custody of the child to unrelated third parties in the domestic relations case. Therefore, we vacate its findings and order and remand the case for further proceedings under the applicable neglect statutes and, if appropriate, the subsequently enacted Foster Children's Guardianship Act, D.C.Code §§ 16–2381 *et seq.* (2006 Supp.) (providing for creation of permanent guardianships). In

---

** Judge Wagner was Chief Judge of the court when this case was argued. Her status changed to Senior Judge on December 21, 2005.

1. Unless otherwise indicated, all citations to the D.C.Code are to the 2001 edition.

light of our disposition, we need not address the remaining issues raised on appeal.

## I.

K.T. was born to B.T. on December 15, 1997. On December 20, 1997, the Corporation Counsel filed a neglect petition alleging that the mother had attempted to remove the child from the hospital on two occasions against medical advice, that the child had tested positive for cocaine at birth, and that it was believed that B.T. uses cocaine. The petition named as the father, C.T., and stated that he was the primary caregiver for one of B.T.'s other children and was willing and able to care for K.T. The trial court ordered that the child reside with C.T. *pendente lite.* In March 1998, the guardian ad litem for the child filed a motion to change the child's placement on the grounds that C.T. had failed to provide appropriate care for the child and requested a hearing. A hearing was held on March 9, 1998, and it was determined that C.T. was not the father. W.D. was in court on that date, and he stated that if paternity tests showed that he was K.T.'s father, he wanted custody of the child. The court ordered paternity tests, and it placed the child *pendente lite* with appellees, C.S.M. and E.T.S. C.S.M. had met B.T. while his law partner represented her in a domestic violence case, and they developed a personal relationship that continued after the firm ceased to represent her. C.S.M. first met the child in January 1998. At the time, C.S.M. and E.T.S. were interested in adopting a baby.

On May 5, 1998, paternity tests confirmed that W.D. was K.T.'s father. C.S.M. took K.T. to W.D.'s residence so that he could visit with the child on May 11, 1998. On May 22, 1998, the guardian ad litem requested a continuance of the scheduled trial date, which was apparently reset until October 14, 1998. On October 19, 1998, W.D. filed a motion for a home study so that the child could be placed with him, or alternatively for an evaluation of a relative's home. In that motion, he asserted that he had previously requested the study in June 1998. On November 9, 1998, the court entered an order for a home study to determine the propriety of placement of the child with W.D.

On December 4, 1998, the District moved to amend the neglect petition to include an allegation that W.D. had abandoned the child. *See* D.C.Code § 16–2301(9)(A). On December 9, 1998, C.S.M. and E.T.S. notified the court in the neglect proceeding that they had filed a verified complaint for permanent custody of K.T. in the Domestic Relations Branch of the Family Division on October 14, 1998 in Case No. 98–DR–33169–C.

Following the neglect trial, the trial court (Judge Diaz) found that K.T. is "a neglected child pursuant to D.C.Code § 16–2301(9)(C) in that the mother is unable to discharge her parental responsibilities due to her incarceration." The court further found that the government had failed to meet its burden of proving that W.D. had abandoned the child. The court explained in that regard that

> [t]he evidence shows that subsequent to being notified of his paternity on May 5, 1998, [W.D.] expressed a willingness to have visitation with [K.T.], and even made effort towards obtaining physical custody of his son. Additionally, [W.D.] has consistently reported to the instant neglect and abuse proceedings, further reinforcing the perception that he harbors a genuine interest in maintaining a parental relationship with respondent.

C.S.M. and E.T.S. requested that the court reconsider its decision finding that the government had failed to prove abandonment, or alternatively, that it vacate that

portion of its decision. The court denied the motion for reconsideration. The court entered a formal order granting W.D. supervised visits with the child.

Subsequently, a trial was held on the civil complaint for permanent custody that had been filed by C.S.M. and E.T.S. against the child's parents in October 1998. At the conclusions of the trial, the court (Judge Mary Ellen Abrecht) found that the best interests of the child required granting the complaint for permanent custody. The court specifically found that B.T. is not fit to parent the child, but it declined to address W.D.'s fitness to parent the child. However, the court found that W.D. had not grasped his opportunity interest to parent the child. In deciding the case, the court relied upon the statutory factors set forth in D.C.Code §§ 16–911(a), –914 (custody incidental to divorce actions) and D.C.Code § 16–2353(b) (termination of parental rights).[2]

## II.

Although the domestic relations case filed by appellants was consolidated with the neglect proceeding, the trial court's award of permanent custody to appellees was based upon its apparent view of its authority to act under D.C.Code §§ 11–1101 and 16–911, –914.[3] We reach this conclusion for the following reasons. First, the order was entered in response to appellees' complaint for custody which they candidly characterize as a "civil, private-party, child custody case that had been filed by appellees in the DR branch pursuant to D.C.Code §§ 11–1101(4), 16–301(b)(3), and 16–4503." Second, the trial court's order granting appellees' permanent custody specifies that it made its findings of fact and conclusions of law in light of the relevant facts set forth in "D.C.Code § 16–911(a)[(5)], –914 dealing with custody...."[4] Third, the neglect case was consolidated with the domestic relations case only after completion of the trial on the neglect complaint, and the entry of a disposition order providing for private placement with appellees for an indeterminate period not to exceed two years, specified visitation rights for the father and a date for an intermediate review. Fourth, the purpose of consolidation was not to address the issues in the context of a

**2.** To the extent that other factual and procedural matters are relevant to the disposition of the case, they will be set forth in the discussion that follows.

**3.** D.C.Code § 11–1101(4) provides that the Family Division (now Family Court) shall be assigned exclusive jurisdiction, in accordance with Chapter 9 (Divorce, Annulment, Separation, Support), of "actions seeking custody of minor children, including petitions for writs of habeas corpus." Jurisdiction under D.C.Code § 16–911(a)(5) covers custody of children incidental to actions for divorce, annulment, and other cases involving parents as hereinafter discussed. D.C.Code § 16–914 provides for the Superior Court's retention of jurisdiction for future orders after issuance of an order for custody, among others.

**4.** D.C.Code § 16–911(a)(5) sets forth relevant factors for determining the best interest of the

child for the purpose of making joint or sole custody determinations. D.C.Code § 16–914, which provides for the court's retention of jurisdiction for future orders related to child custody issues, provides a similar list of relevant factors for consideration. Although the trial court also considered factors relevant to proceedings for the termination of parental rights, specifically, D.C.Code § 16–2353(b), it is clear that this was not a proceeding to terminate the parental rights, and no party claims otherwise. Such petitions, when granted, result in the complete severance and extinguishment of the parent and child relationship. D.C.Code § 16–2352(a)(2). Accordingly, the statute includes important safeguards to "ensure that the constitutional rights of all parties are recognized and enforced ... while ensuring that the fundamental needs of children are not subjugated to the interests of others." D.C.Code § 16–2351(a)(2).

neglect proceeding, but rather, as appellees concede, to provide for the child's parents the benefit of free legal services from the attorneys who had represented them in the neglect proceeding.[5] Therefore, we consider whether the trial court had the authority to grant permanent custody of a minor child, who was under the court's jurisdiction in a neglect case, to third parties in a proceeding filed by them under Chapter 9 ("Divorce, Annulment, Separation, Support, etc.") of the domestic relations laws.

■ This court has held that the Superior Court's authority under D.C.Code § 11–1101 and §§ 16–911, –914 contemplates an award of custody as between parents. *T.S. v. M.C.S.*, 747 A.2d 159, 163–64 (D.C. 2000). In reaching this conclusion in *T.S.*, this court undertook an extensive analysis of the statutory provisions related to the court's authority under the divorce laws in Chapter 9 of the Code, where §§ 16–911, –914 appear.[6] The court observed that the provisions in this chapter focus on parents and concluded that, read in context, "there is no reason to believe that the drafters had in mind a custody arrangement not involving either parent." *Id.* at 164. Particularly relevant to this case, the court stated that unlike the neglect statutes, "the divorce statutes do not include the

procedural safeguards to which a parent is entitled before custody can be taken from the parent and awarded to a non-parent." *Id.* at 163. Therefore, "the [Superior Court's] authority under the divorce law … does not permit [it] to conduct a *de facto* neglect proceeding without invoking the procedures prescribed by the legislature for cases of this kind." *Id.* at 164 (internal footnote omitted).

The protections afforded by the child neglect statutes, D.C.Code §§ 16–2301 *et seq.*, are extensive and substantial both before and after an adjudication of neglect. We focus here primarily on the protections afforded after an adjudication of neglect and the entry of a disposition order because of the status of the neglect case.[7] In the neglect case involving the child, there had already been an adjudication that the child was neglected by reason of the mother's inability to discharge her responsibility due to her incarceration. *See* D.C.Code § 16–2301(9)(C). Although the court determined in that same proceeding that the evidence failed to establish that appellant, W.D., had abandoned the child as alleged under D.C.Code § 16–2301(9)(A), the court entered a disposition order providing for private placement with appellees pursuant to D.C.Code § 16–2320(a)(3)(C).[8]

---

5. *See* D.C.Code § 16–2326.01 (providing for compensation of attorneys in neglect and termination of parental rights proceeding).

6. Chapter 9 is captioned "Divorce, Annulment, Separation, Support, etc."

7. In *T.S., supra,* there is a detailed list of protections afforded under the child neglect statutes prior to adjudication and the initial disposition order. 747 A.2d at 164–65. Among these are: (1) a fact-finding hearing and written findings as to whether the child is neglected (D.C.Code § 2317(a) & (b)); (2) a predisposition study by the Director of Social Services, or qualified agency concerning the child, his family and "other matters relevant to the need for treatment or disposition of the

case" (D.C.Code § 16–2319(a)); and (3) a statement of the specific harms intervention is designed to alleviate, plans for alleviating them, and recommended actions including, *e.g.,* parenting classes and family counseling, the criteria for determining that intervention is no longer necessary, and plans for "maximiz[ing] the parent-child relationship consistent with the well-being of the child." (D.C.Code § 16–2319(c)(1) & (c)(2)(D)). *Id.* at 165.

8. D.C.Code § 16–2320(a)(3)(C) authorizes the court to transfer custody to a qualified relative or other individual provided it finds that "the child cannot be protected in the home and there is an available placement likely to be less damaging to the child than the child's own home."

Following the entry of such a disposition order, substantial protections are afforded under the child neglect statutes for the protection of the child and the rights of the parents. When the court removes the child from a parent's custody, it can do so for only a period not to exceed two years unless that time is extended by further court order. D.C.Code § 16–2322(a)(2). Prior to entry of an order vesting legal custody in someone other than the child's parents, a report must be submitted to the court setting forth, among other things, a plan for alleviating the harm that intervention was designed to alleviate, including recommended services to address any harms, including, *e.g.*, family counseling and parenting classes. D.C.Code § 16–2319(c)(1)(B). The plan would also set forth "the estimated time in which the goals of intervention may be achieved or in which it will be known that the goals may not be achieved[,]" and "plans for maintaining contact between the parent and child through visitation rights in order to maximize the parent-child relationship consistent with the well-being of the child." D.C.Code § 16–2319(c)(1)(C) & (c)(2)(D). The court has authority to order D.C. public agencies to provide services that are needed and within the agency's authority. D.C.Code § 16–2320(a)(5). The services provided and the progress made would be monitored regularly by the court. Specifically, "periodic reviews are required so that the court may determine whether it remains necessary for the child to be in the custody of a non-parent." *T.S., supra,* 747 A.2d at 165 (citing D.C.Code § 16–2323). Prior to the review hearing, a report must be filed by the agency or entity responsible for supervision of services to the child, the child's parents or custodian, including, but not limited to, information concerning: (1) services provided to the child and his or her parent, guardian or other custodian; (2) evidence, if any, of amelioration of the conditions that resulted in the neglect adjudication; (3) an evaluation of the cooperation of the parent or custodian with the agency or other entity involved; (4) the extent of visitation and explanations for infrequent or no visitation; (5) "[t]he estimated time in which the child can be returned to the home"; and (6) the agency's intention to initiate through the Corporation Counsel a motion requesting termination of parental rights and the reasons for not doing so. D.C.Code § 16–2323(d).[9] If the court finds that the child's care by the non-parent is no longer required, it may order the child to be returned home and provide for supervision or other services. D.C.Code § 16–2323(f)(1).[10] Reasonable efforts to reunify the family, and if not, to make permanent plans for the child's future are an integral part of the child neglect statutory scheme.[11]

9. Although portions of D.C.Code § 16–2323 were revised by emergency legislation and subsequently by D.C. Law 13–136 in 2000, the provisions from the 2001 edition of the Code which are referenced here are virtually unchanged from the provisions in D.C.Code § 16–2323(b)(1)–(5) (1997 Repl. Vol.).

10. Section 16–2323(f) (2001) is virtually identical to former D.C.Code § 16–2323(d).

11. Amendments to the child neglect statutes subsequent to the disposition order in the child's neglect case continue the goals of achieving family reunification or other permanent arrangement. *See* D.C.Code § 16–2323(a)(4) & (c)(1)-(4) (providing for the development of permanency plans for the child to include a determination of when the child will be returned to the parent, placed for adoption, or in another permanent living arrangement). However, permanency plans include consideration of efforts to ameliorate the conditions that resulted in the neglect, the provision of family services, parental visitation of children taken from their care and an evaluation of the parents' cooperation. *See* D.C.Code § 16–2323(d)(1)–(5).

■ Appellees' complaint seeking custody in the domestic relations proceeding was filed before the child had been adjudicated neglected.[12] The trial court's order in the domestic relations case awarding permanent custody to appellees was entered prior to the first scheduled review under the terms of the neglect disposition order entered under D.C.Code § 16–2320. This procedure effectively bypassed the extensive protections for the parent and child that govern neglect proceedings.

■ In *T.S., supra,* this court reversed the trial court's order awarding permanent custody of the parties' two children to their maternal grandmother, their *pendente lite* custodian, in a suit filed by the father against the mother for divorce and modification of a prior consent order placing custody in the mother. *Id.* 747 A.2d at 160–61. There was an open neglect case in which it had been determined that the father had abused one of the parties' two children, and custody was placed with the mother. *Id.* at 161. In the domestic relations case, the court found that the mother had failed to protect her daughter's needs after allegations of abuse by a cousin, that her home environment was "unfit," and that the children were thriving under the temporary custody of the grandmother. Therefore, the court modified the original custody order and awarded permanent custody to the grandmother.[13] *Id.* at 162. This court held that the trial court could not remove the children from the mother's custody without instituting neglect proceedings where she would be accorded the safeguards provided under the neglect statutes. *Id.*

That principle is applicable to the present case. Here, it was determined in the neglect proceeding that the father had not neglected the child. Although the court provided for the child to remain with appellees in its initial disposition order, under the neglect statutes that does not end the protections afforded to the parent nor eliminate the opportunity for the parent to obtain custody of the child and reintegrate the child into the parent's family.[14] The procedure employed here bypassed those protections that include reasonable efforts at reunification of the child with his family. An award of permanent custody in a domestic relations case does not carry with it the safeguards of periodic reviews, family reunification efforts, reports and evaluation of parental cooperation, and careful and comprehensive permanency planning for the child's future.[15] *See* D.C.Code § 16–2323. Even the parent whose conduct or circumstances formed the basis for

12. Under the neglect statutes, with limited exceptions not pertinent here, a motion to terminate parental rights cannot be filed until six months after the child has been adjudicated neglected. D.C.Code § 16–2354(b)(1) (1997 Repl. Vol.). Although appellees did not seek an order terminating parental rights, the trial court considered those statutory factors for the proceedings in making its award of permanent custody.

13. In domestic relations proceedings, the trial court has continuing jurisdiction to modify custody arrangements in the best interest of the child based on a change of circumstances "both substantial and material to the child's welfare and best interests." *Rice v. Rice,* 415 A.2d 1378, 1383 (D.C.1980) (citations omitted); *see* D.C.Code § 16–914 (providing for retention of jurisdiction as to custody of children and care of children and certain other matters).

14. *Pendente lite* custody of the child was placed with appellees before it was determined that W.D. was the child's father.

15. The Superior Court has continuing jurisdiction to modify custody arrangements in domestic relations proceedings based on a change of circumstances substantial and material to the best interest of the child. *See Rice, supra* note 13, 415 A.2d at 1383 (citations omitted); D.C.Code § 16–914(a)(1).

a finding of neglect is entitled to these safeguards under the neglect statute. *Id.* Clearly, a parent who was found in the neglect proceeding not to have neglected the child, as appellant W.D. was here, would be entitled to such protections. *See T.S., supra,* 747 A.2d at 166 (holding that the court lacked authority in the context of a domestic relations proceeding to award custody of a child to a third party based upon alleged abuse where the mother had never been afforded the safeguards of the neglect statutes).

Appellees argue that the Superior Court's authority to award permanent custody in this case does not derive from the neglect statutes, but from an "independent and altogether different judicial authority." They contend that they could have filed for custody of the child in a domestic relations case even if there had never been a neglect proceeding. They argue that just as there is no statutory authority for the court to adjudicate disputes between unmarried biological parents, there need not be specific statutory authority to adjudicate disputes between biological parents and third parties. They contend that the court's authority to adjudicate such disputes derives from its general statutory authority under such provisions as D.C.Code § 11–1101(4) (setting forth the proceedings over which the Family Division of Superior Court (now Family Court) has exclusive jurisdiction), D.C.Code § 21–101(b) (addressing the power of the court to appoint a guardian for minor children), and D.C.Code § 16–4503 (defining when Superior Court may exercise its jurisdiction to make child custody determinations in multi-jurisdictional cases).

In *Ysla v. Lopez,* 684 A.2d 775 (D.C. 1996), cited by appellees in support of their position, this court held that the same statutory factors and procedures that apply to custody of married parents govern the award of custody to unmarried parties, while observing that D.C.Code §§ 16–911, –914 (providing respectively for *pendente lite* custody orders pending actions for divorce or annulment and permanent orders after decree) are not directly applicable to actions between parties who were never married to each other. *Id.* at 778. However, in *Ysla,* this court was guided by the absence of any reason to believe that the legislature intended that the same statute should not apply to custody disputes between parents who had never been married. *Id.* On the contrary, the court found that there was a clear expression of legislative intent that the same factors should govern in custody disputes between unmarried parents found in D.C.Code §§ 16–911(a)(5), –914(a)(2) (providing for the court to make determinations in the best interest of the child, including contact with the children and shared responsibilities, without regard to the parents' marital status). *Id.* at 778. Further buttressing this conclusion are provisions in the domestic relations chapter making clear that the rights, duties, privileges and obligations for parents is the same whether the children were born in or out of wedlock. *See* D.C.Code §§ 16–907, –908.[16] That such rights and

16. D.C.Code § 16–907 defines the parent-child relationship as follows:

(a) The term "legitimate" or "legitimated" means that the parent-child relationship exists for all rights, privileges, duties, and obligations under the laws of the District of Columbia.

(b) The term "born out of wedlock" solely describes the circumstances that a child has been born to parents who, at the time of its birth, were not married to each other. The term "born in wedlock" solely describes the circumstances that a child has been born to parents who, at the time of its birth, were married to each other.

responsibilities would be subject to the court's jurisdiction under the same chapter of the Code as parents who had been married seems patent.

■ The same cannot be said with respect to a child who is under the court's jurisdiction by reason of the pendency of a neglect proceeding. Put another way, there is no reason to believe that the legislature intended to extend the reach of the court's domestic relations jurisdiction and its standards and procedures into an area where it had provided for extensive procedures specifically designed to protect abused and neglected children. The court's general powers to adjudicate matters involving children under other sections of the Code, cited by appellees, do not support their argument that these provisions were intended to be used, or can be used, as a vehicle to bypass the operation of the neglect statutes. The statutory procedures governing abused and neglected children are comprehensive and extensive. *See T.S., supra,* 747 A.2d at 164–65. The question is whether the legislature has sought to limit the court's inherent authority. *See Ysla, supra,* 684 A.2d at 778 (citing *Taylor v. Taylor,* 306 Md. 290, 508 A.2d 964, 968 (1986)). In this area, we conclude that the legislature has preempted the power of the court to exercise its inherent authority to override the procedures established for determining the future of abused and neglected children.[17]

Appellees argue that there is no good reason why neglect cases must be resolved under the neglect statutes by reunification of the family or by termination of parental rights. They contend that the trial court's order awarding them permanent custody provides a middle ground between these alternatives. However, the entry of an

---

D.C.Code § 16–908 provides: "A child born in wedlock or born out of wedlock is the legitimate child of its father and mother and is the legitimate relative of its father's and mother's relatives by blood or adoption."

17. Appellees cite a string of cases in support of their position that the trial court has authority to adjudicate custody disputes between biological parents and third parties as a matter of the court's basic equity jurisdiction. These cases are of no avail because none arose in the factual context presented here. *See, e.g., In re J.S.R.,* 374 A.2d 860, 864 (D.C. 1977) (upholding grant of adoption over mother's objection where shown by clear and convincing evidence that her consent was withheld contrary to the best interest of the child); *In re N.M.S.,* 347 A.2d 924, 927 (D.C. 1975) (finding no error in continued placement of neglected child with foster parents pending further court order where mother voluntarily surrendered custody to Department of Public Welfare and made no effort to regain custody for nine years); *Rutledge v. Harris,* 263 A.2d 256, 257 (D.C.1970) (reversing order awarding custody to father of teen-aged children who resided and wanted to remain with grandmother after their mother's death, where the court failed to weigh factors bearing on father's unfitness); *Cooley v.* *Washington,* 136 A.2d 583, 584 (D.C.1957) (case remanded for a hearing adapted to serve the child's best interest in a suit between natural mother and step mother where there was no legally vested right in either party upon the death of the adoptive parents); *Kirk v. Kirk,* 80 U.S.App.D.C. 183, 150 F.2d 589 (1945) (holding that the District Court erred in holding itself bound by a West Virginia order under which the mother ceded custody to the grandmother for the sake of the child's health where the record showed a change of circumstances); *Holtsclaw v. Mercer,* 79 U.S.App.D.C. 252, 145 F.2d 388 (1944) (upholding order maintaining the status quo in the best interest of the child where mother who petitioned for a writ of habeas corpus had signed an agreement relinquishing custody); *Sardo v. Villapiano,* 65 App.D.C. 121, 81 F.2d 255 (1935) (upholding grant of habeas petition for child custody filed by a mother against the child's paternal grandfather after the death of the father who had custody); *Beall v. Bibb,* 19 App.D.C. 311 (1902) (affirming custody award to a mother in a *habeas corpus* proceeding filed by the mother's relatives with whom children stayed for several years after their father's death).

order for permanent custody, at the time it was entered, was not sanctioned by law.

Subsequent to the entry of the court's order awarding permanent custody to appellees, the Council of the District of Columbia enacted in final form the Foster Children's Guardianship Act, D.C.Code §§ 16–2381 *et seq.* (2006 Supp.) (Act) which authorizes the creation of a permanent guardianship. The general purpose of the Act is to:

(1) [e]ncourage stability in the lives of certain children who have been adjudicated to be neglected and have been removed from the custody of their parent by providing judicial procedures for the creation of a permanent guardianship in the circumstances set forth in this subchapter;

(2) [e]nsure that the constitutional rights of all parties are recognized and enforced in all proceedings conducted pursuant to this subchapter while ensuring that the fundamental needs of children are not subjugated to the interests of others; and

(3) [i]ncrease the opportunities for the prompt permanent placement of children, especially with relatives, without ongoing government supervision.

D.C.Code § 16–2381 (2006 Supp.). The court appointed guardian operates under a guardianship order that "enumerates the permanent guardian's rights and responsibilities concerning the care, custody, and control of the child." D.C.Code § 16–2382(a)(2) (2006 Supp.). A permanent guardianship may be established only if the child has been adjudicated neglected pursuant to D.C.Code § 16–2317 and if the court determines that:

(1) [t]he permanent guardianship is in the child's best interests;

(2) [a]doption, termination of parental rights, or return to parent is not appropriate for the child; and

(3) [t]he proposed permanent guardian is suitable and able to provide a safe and permanent home for the child.

D.C.Code § 16–2383(c)(1)–(3) (2006 Supp.). The entry of a guardianship order does not terminate the parent-child relationship including:

(1) [t]he right of the child to inherit from his or her parents;

(2) [t]he parents' right to visit or contact the child (except as limited by the court);

(3) [t]he parents right to consent to the child's adoption;

(4) [t]he parents right to determine the child's religious affiliation; and

(5) [t]he parents' responsibility to provide financial, medical and other support for the child.

D.C.Code § 16–2389(c)(1)–(5) (2006 Supp.). Thus, the Act provides this additional option to the Family Court by which it can achieve permanency for the neglected child while ensuring the fundamental rights of all parties.[18] *See In re A.G.,* 900 A.2d 677 (D.C.2006).

In light of all of the foregoing considerations, we conclude that the proper disposition of this appeal requires that the findings of fact and order of the trial court awarding permanent custody to appellees must be vacated and that the case must be remanded to the trial court for further proceedings under the neglect statutory scheme, including proceedings in conformity with the Act, if appellees choose to pursue that course, consistent with the

---

**18.** While the permanent guardianship order remains in effect, the requirements of D.C.Code § 16–2322 (limitation on time for dispositional orders) and § 16–2323 (review of dispositional orders) are suspended. D.C.Code § 16–2389(e) (2006 Supp.).

circumstances as they exist and with this opinion.[19]

Therefore, we reverse and remand the case to the trial court with instructions to vacate the findings and order granting permanent custody to appellees in the domestic relations case and for further proceedings in the neglect proceedings consistent with this opinion.[20]

*So ordered.*[21]

**19.** Since the Act requires different and/or additional allegations and proof than those asserted in appellees' complaint for custody, *see* D.C.Code § 16–2384(c), and because the parties may wish to pursue another form of permanency, we do not instruct the trial court to consider the complaint for permanent custody as if it had been filed under the Act. D.C.Code § 16–2384(c)(6) requires, for example, that the motion for permanent guardianship set forth, among other things, "[a] statement why permanent guardianship, rather than adoption, termination of parental rights, or return to parent, is in the child's best interests." Such critical factors were not the subject of the domestic relations proceeding.

**20.** The trial court also found that W.D. had failed, as a constitutional matter, to grasp his opportunity interest to parent the child. *See Lehr v. Robertson,* 463 U.S. 248, 261, 103 S.Ct. 2985, 77 L.Ed.2d 614(1983) (holding that an unwed father may be afforded "substantial protection under the Due Process Clause" when he "demonstrates a full commitment to the responsibilities of parenthood by com[ing] forward to participate in the rearing of his child," but "the mere existence of a biological link does not merit equivalent constitutional protection"); *Appeal of H.R. (In re Baby Boy C.),* 581 A.2d 1141 (D.C.1990); *see also In re L.J.T.,* 608 A.2d 1213, 1216 n. 6 (D.C.1992). W.D. challenges that finding. However, our determination that the trial court applied the wrong statutory framework in making its findings and conclusions of law vitiates this finding as well. Should the opportunity interest question arise in any future proceedings, the trial court should decide that issue *de novo* guided by decisions such as *Baby Boy C.,* 581 A.2d at 1162 (Ferren, J., concurring) (focusing the "opportunity interest" inquiry on whether the father has done all he could reasonably do under the circumstances to pursue that interest after he has learned of his biological connection with the child).

**21.** If the neglect file has been closed, the court is instructed to reopen it.