**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 11-4012

———————

KWAME BOATENG SAKYI,

Petitioner,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A045-161-469)
Immigration Judge: Andrew Arthur

———————

Argued July 13, 2012

Before: FUENTES, HARDIMAN, and ROTH <u>Circuit Judges</u>

(Opinion Filed:  September 5, 2012)

Robert A. Arhin, Esq. [ARGUED]
Arhin and Associates
1003 K Street, N.W., Suite 670
Washington, DC 20001

Yedidya Cohen, Esq. [ARGUED]
Jennifer P. Williams, Esq.
Office of Immigration Litigation
United States Department of Justice, Civil Division
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

FUENTES, Circuit Judge:

Kwame Boateng Sakyi petitions this Court for review of the Board of Immigration Appeals' final order of removal. We conclude that this case presents a genuine issue of material fact regarding Sakyi's nationality. Therefore, we will transfer the proceeding for a new hearing before a district court pursuant to 8 U.S.C. § 1252(b)(5)(B).

**I**

Because we write primarily for the parties, who are well acquainted with the case, we recite only the facts essential to our disposition of this petition. Sakyi was born in Ghana in October 1982 and immigrated to the United States as a lawful permanent resident in August 1995. In February 1996, Sakyi's parents were divorced by decree of the Superior Court of the District of Columbia. In a two-page form order, the Superior Court awarded custody of Sakyi to his maternal grandmother in Ghana—apparently on the mistaken belief that he was living with her there. In September 1999, when Sakyi was 16 years old, his mother became a naturalized U.S. citizen. There is no evidence that Sakyi's father has ever naturalized.

In April 2007, Sakyi pleaded guilty to charges of conspiracy to possess heroin with the intent to distribute and was sentenced to 70 months' imprisonment. While Sakyi was serving his sentence at the Allenwood Federal Correctional Complex in White Deer, Pennsylvania, the Department of Homeland Security ("DHS") initiated removal

proceedings against him on the ground that this heroin conviction constituted an aggravated felony and a controlled substance violation. Sakyi contested his removability on the basis that he was a U.S. citizen, having derived citizenship through his mother. To prove that he was in his mother's legal custody at the time of her naturalization, Sakyi and his sister gave testimony at a hearing before the Immigration Judge (the "IJ") and Sakyi submitted documentary evidence and affidavits from his mother and his aunt. DHS presented documentary evidence suggesting that Sakyi lived with his nearby aunt at the time. The IJ found that Sakyi had failed to carry his burden of demonstrating by a preponderance that his mother had legal custody of him at the time of her naturalization. Since Sakyi had not raised any other defenses to removal or applications for relief, the IJ ordered Sakyi removed. The Board of Immigration Appeals (the "BIA") affirmed on September 14, 2011, and Sakyi filed this petition for review.[1]

## II

We have jurisdiction over Sakyi's petition for review of the BIA's final order of removal pursuant to 8 U.S.C. § 1252. See Papageorgiou v. Gonzalez, 413 F.3d 356, 357 (3d Cir. 2005) (observing that we have jurisdiction to determine whether the petitioner is in fact an alien). Our review of Sakyi's citizenship claim is governed by 8 U.S.C. § 1252(b)(5), which provides:

> (A) Court determination if no issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds from the

---

[1] We denied Sakyi's motion for a stay of removal on December 15, 2011, and Sakyi was removed to Ghana on March 14, 2012. Prior to his removal, Sakyi was detained by DHS at the Clinton County Correctional Facility in McElhattan, Pennsylvania, and in the York County Prison in York, Pennsylvania.

pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim.

(B) Transfer if issue of fact. If the petitioner claims to be a national of the United States and the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented, the court shall transfer the proceeding to the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court under section 2201 of Title 28.

(C) Limitation on determination. The petitioner may have such nationality claim decided only as provided in this paragraph.

8 U.S.C. § 1252(b)(5) (underlining added).

Under this section, we must determine whether Sakyi's citizenship claim presents a genuine issue of material fact. Our standard for making this determination is identical to the standard we use for reviewing a district court's grant of summary judgment. Joseph v. Att'y Gen., 421 F.3d 224, 229 (3d Cir. 2005). "[A] court of appeals cannot refuse to allow a de novo review of a citizenship claim if the evidence presented in support of the claim would be sufficient to entitle a litigant to trial were such evidence presented in opposition to a motion for summary judgment." Id. at 229-30 (quoting Agosto v. INS, 436 U.S. 748, 756 (1978)). "Accordingly, the government, as the party seeking what amounts to summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish its right to judgment as a matter of law." Id. at 230 (internal quotation marks omitted). Thus, the sole issue before us is whether the Government is entitled to what amounts to summary judgment on Sakyi's derivative citizenship claim.

4

## III

At all times relevant to this case, the statute on derivative citizenship provided that "[a] child born outside the United States of alien parents . . . becomes a citizen of the United States" upon "[t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents." INA § 321(a), 8 U.S.C. § 1432(a) (1995), repealed and superseded by Child Citizenship Act of 2000, Pub. L. No. 106-395, 114 Stat. 1631 (2000).[2] Under former INA § 321(a)(3), Sakyi must prove four essential facts to establish his U.S. citizenship: (i) that his mother was naturalized after a legal separation from his father; (ii) that his mother was naturalized before he turned eighteen; (iii) that he was residing in the United States as a legal permanent resident at the time of his mother's naturalization; and (iv) that his mother had legal custody of him at the time of her naturalization. See Bagot v. Ashcroft, 398 F.3d 252, 257 (3d Cir. 2005). The government concedes the first three of these facts. This case therefore turns on whether Sakyi was in the legal custody of his mother at the time of her naturalization.

The leading case in this Circuit on "legal custody" for the purpose of derivative citizenship is Bagot v. Ashcroft, 398 F.3d 252. Under the majority opinion in that case, legal custody is resolved in the first instance by a valid judicial determination of custody in the specific case. Id. at 254. If there is no such determination, legal custody means "actual uncontested custody." Id.; see also id. at 270 (Nygaard and Rosenn, JJ.,

---

[2] Former INA § 321(a), 8 U.S.C. § 1432(a), controls this case notwithstanding the Child Citizenship Act of 2000 because Sakyi's mother was naturalized in 1999, before § 321(a) was repealed. See Joseph, 421 F.3d at 230 n.11.

concluding therefore that an analysis of state custody law is "unnecessary and irrelevant" in the absence of a valid custody decree).

## A

We first consider, as a matter of law, whether the D.C. divorce decree purporting to award custody of Sakyi to his grandmother in Ghana was a valid judicial determination of custody. The IJ determined that the D.C. Superior Court lacked authority under Bagot to enter the custody award in this case, and the BIA assumed the same. Before this Court, however, the Government argues that the D.C. Superior Court's divorce decree is valid and that, therefore, Sakyi's grandmother, not his mother, had legal custody of him at the relevant time. We disagree.

The Government contends that that Court could have exercised subject-matter jurisdiction to determine custody if (1) Sakyi was living in D.C. at the time of the commencement of his parents' divorce proceedings, or (2) Sakyi and at least one parent had a significant connection with the District of Columbia and there was substantial evidence available in the District concerning his future care, protection, training, and personal relationships. See D.C. Code § 16-4503(a)(1)-(2) (1981) (repealed 2001).

We conclude, however, that the D.C. Superior Court lacked authority to invoke jurisdiction on grounds of residency or "significant connection" given that it believed that Sakyi was residing in Ghana and the court made no findings of fact as to the appropriateness of the forum to determine custody. Cf. Bagot, 398 F.3d at 264-65. In addition, D.C. law did not authorize the Superior Court to award custody to a non-party in divorce proceedings. See T.S. v. M.C.S., 747 A.2d 159, 163 (D.C. 2000) (holding that

6

"the divorce statutes do not authorize the trial judge to award custody of the children to their grandmother, especially where the grandmother has not consented"); see also W.D. v. C.S.M., 906 A.2d 317, 321 (D.C. 2006) (reaffirming that the D.C. divorce statutes contemplate an award of custody only between parents).

**B**

Because the D.C. Superior Court's custody award was invalid, we must consider whether Sakyi's mother could have had actual uncontested custody of him at the time that she naturalized. As the Government candidly concedes, any inquiry into actual uncontested custody in this case "raises a material question of fact because there is conflicting evidence in the record." (Respondent's Br. at 33). Sakyi has introduced testimony and affidavits that he was in his mother's custody at the time of her naturalization. In addition, while other evidence suggests that he may have resided instead with his aunt, that is not necessarily inconsistent with his mother having "actual uncontested custody" of him.

Because this issue presents a genuine issues of material fact, we will transfer this proceeding to "the district court of the United States for the judicial district in which the petitioner resides for a new hearing on the nationality claim and a decision on that claim as if an action had been brought in the district court [for a declaratory judgment] under section 2201 of Title 28." 8 U.S.C. § 1252(b)(5)(B). Although, since his removal, Sakyi no longer resides in any United States judicial district, all of his places of incarceration and detention during the removal proceedings in this case were located in the Middle

7

District of Pennsylvania.  Both parties therefore agree that that district is the proper venue of any transfer under 8 U.S.C. § 1252(b)(5)(B), and we also agree.

**IV**

Accordingly, we will vacate the order of the BIA and transfer the proceeding to the United States District Court for the Middle District of Pennsylvania for a <u>de novo</u> hearing and declaratory judgment on Sakyi's nationality claim.  Should this matter be returned to this Court, it shall be assigned to this Panel for disposition on the merits.